**UNITED STATES of America,**
**Appellee,**

v.

**Robert Lee JOHNSON, Appellant.**

**No. 98–3122.**

United States Court of Appeals,
District of Columbia Circuit.

Argued May 3, 2000.

Decided May 30, 2000.

---

Sandra G. Roland, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was A. J. Kramer, Federal Public Defender. Neil H. Jaffee, Assistant Federal Public Defender, entered an appearance.

Catherine Motz, Assistant United States Attorney, argued the cause for appellee. On the brief were Wilma A. Lewis, U.S. Attorney, John R. Fisher, Elizabeth Trosman, and Florence Pan, Assistant U.S. Attorneys.

Before: SILBERMAN, SENTELLE, and ROGERS, Circuit Judges.

SILBERMAN, Circuit Judge:

Robert Lee Johnson appeals his conviction for possession, with intent to distribute, of crack cocaine. He argues that the evidence against him was the product of a stop and frisk that was not supported by reasonable suspicion. We affirm.

## I.

According to the evidence in the record, on the night of Johnson's arrest, two officers of the Metropolitan Police Department were driving in an unmarked car in an area of Southeast Washington they characterized as "a high narcotics area." They pulled into a parking lot and saw a parked car with two people in it. Johnson was sitting on the passenger's side, and another person was on the driver's side. The officers saw a young woman leaning into the passenger's window and handing Johnson an object, which they could not

identify. At this point they approached the car and the woman began to walk away.

One of the officers, Michael Fulton, saw Johnson make what Fulton described as a "shoving down" motion, leading him to believe that Johnson might be armed. He drew his gun, advised his partner to do the same, and shouted, "Let me see your hands." Johnson did not immediately comply but rather made "a couple of more shoving motions down" before raising his hands. Fulton reached into the car and touched a bulge in Johnson's left pants pocket. He felt large, hard objects which he believed to be rocks of crack cocaine. He then removed a plastic bag from the pocket. It contained 18 rocks of crack cocaine that, together with another rock found in Johnson's clothing, totaled 72 grams. Johnson was arrested, but the driver of the car and the woman standing outside it were not.

Prior to trial, Johnson moved to suppress all of the evidence recovered from him. He argued that the police did not have a reasonable suspicion that he was engaged in criminal activity, and that the stop and frisk were therefore illegal. The government argued that the stop was permissible under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), because the police reasonably suspected that a drug transaction was taking place, and that the frisk was proper because Johnson's conduct led the officers to believe that he was armed. At a hearing on the suppression motion, the government presented the testimony of Officer Fulton. Johnson called no witnesses. The district court denied the motion without explanation. After a jury trial, Johnson was convicted and was sentenced to 168 months in prison.

On appeal, Johnson renews his argument that the stop was unjustified and that the frisk exceeded the scope allowed by *Terry.* He also contends that the district court erred in failing to make factual findings on the record at the suppression

hearing. In his brief, he suggested that the prosecutor violated the Fifth Amendment by arguing to the jury that Johnson's presence throughout the trial gave him an opportunity to tailor his testimony in response to that of other witnesses. We need not discuss this claim because as counsel conceded at argument the theory underlying it was rejected in the Supreme Court's recent decision in *Portuondo v. Agard,* —— U.S. ——, 120 S.Ct. 1119, 146 L.Ed.2d 47 (2000).

## II.

We begin with Johnson's claim that, regardless of the validity of the stop and frisk, the district court's ruling cannot be affirmed because the trial judge failed to make factual findings on the record. Federal Rule of Criminal Procedure 12(e) provides: "Where factual issues are involved in determining a motion, the court shall state its essential findings on the record." The government agrees that the district court failed to comply with the rule, but it contends that Johnson waived his challenge to this omission because he did not object to the lack of factual findings, nor did he ask the court to explain its ruling.

In *United States v. Harley,* 990 F.2d 1340, 1341 (D.C.Cir.1993), we held that Rule 12(e) can be waived and that when the district court has not made findings, "any factual disputes must be resolved in favor of admissibility and we must uphold the denial of [the] motion if any reasonable view of the evidence supports it." *See also United States v. Caballero,* 936 F.2d 1292 (D.C.Cir.1991). To be sure, when the district court has not made findings, and when it is not clear what legal theory the court relied on, a remand may be required even if the Rule 12(e) defect was waived. *See United States v. Williams,* 951 F.2d 1287 (D.C.Cir. 1991). In *Williams,* the district court not only did not make specific findings, it did not indicate which arguments, of the three that were advanced by the government, it

accepted to justify a search. Noting that the "purpose of an appeal is to review the judgment of the district court, a function we cannot properly perform when we are left to guess at what it is we are reviewing," we relied on our inherent supervisory power over the district courts to order a remand. *Id.* at 1290; *see also United States v. Dale,* 991 F.2d 819, 840 (D.C.Cir. 1993) (reviewing the district court's findings after having remanded "because we did not know which of three separate legal theories advanced by the government the district court had adopted and what facts, if any, it relied on to support its chosen theory").

■■■ Notwithstanding *Williams,* when the validity of a search can be upheld "based upon an argument made by the government below and supported by evidence either uncontested or found credible by the District Court," the denial of a suppression motion may be affirmed. *United States v. Taylor,* 997 F.2d 1551, 1555 (D.C.Cir.1993). The situation in *Williams* was "exceptional," *Harley,* 990 F.2d at 1341 n. 1, and a remand is not necessary unless there is genuine uncertainty about what the district court did. There is no uncertainty here. The government offered only one legal theory—*i.e.,* that Officer Fulton was frisking Johnson for weapons after a *Terry* stop—and it presented uncontroverted testimony from Officer Fulton. The issue then is whether the government's theory is supported by the facts that were presented at the hearing.

■■■ The government identifies several factors that it says provide the "minimal level of objective justification" necessary for a *Terry* stop. *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). First, Johnson's car was in a high-crime area. Officer Fulton described it as a "high narcotics area," adding "I have been involved in numerous narcotics arrests there." While obviously insufficient by itself to amount to reasonable suspicion, this is "among the relevant contextual con-

siderations in a *Terry* analysis." *Illinois v. Wardlow,* —— U.S. ——, ——, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000). Second, Fulton saw a woman lean into the car and hand Johnson an object, and third, when Fulton approached in his unmarked car, the woman walked away and Johnson made a "shoving down" motion.

If the seizure had taken place at that point, we doubt very much whether it would have been valid. As Johnson points out, simply receiving an object from another person—Fulton did not see Johnson give the woman anything in exchange—is a common occurrence for which there could be many innocent explanations. And while Johnson's furtive gestures prior to Fulton's command may be more suspicious, they are significant only if they were undertaken in response to police presence. It is not clear that Johnson was aware that Fulton was a police officer; Fulton was after all in an unmarked car. While Fulton did testify that his car was "one of those ones that everybody knows it's a police cruiser" because it had "a little dome light in it," that may not help much. The government did not seek to qualify Fulton as an expert on public identification of police vehicles, and Fulton did not establish a factual foundation for opinion testimony as a lay witness. *Cf.* FED. R. EVID. 701, 702.

We need not focus on those questions, however, because we do not think the seizure took place immediately after Johnson's first "shoving down" motion, when Fulton drew his gun and ordered Johnson to raise his hands. Under *California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), a seizure requires the application of physical force or submission to an assertion of authority. Before Johnson raised his hands, Fulton had made a show of authority but Johnson had not submitted to it. On the contrary, he continued to make "shoving down" motions, gestures that were the very opposite of complying with Fulton's order, and which a reasonable officer could have

thought were actually suggestive of hiding (or retrieving) a gun. In sum, by the time the stop actually took place, it was supported by Johnson's continued furtive gestures in response to being confronted by a police officer, and that was suspicious enough to support a reasonable belief that Johnson may have been engaged in criminal activity.

Johnson argues that the stop actually took place much earlier: as soon as the officers pulled into the parking lot, because they blocked Johnson's car with their own. *Brower v. County of Inyo,* 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989), suggests that blocking a vehicle can be the kind of application of physical force that constitutes a seizure. So if Johnson's car had been blocked, he would have been stopped, and the stop would be invalid because at that point Fulton had almost no reason to suspect Johnson of wrongdoing. But Johnson can find little factual support for this argument in the record. The testimony on which he relies is ambiguous at best; such as Fulton's statement that "I was in a parking lot almost in front of their vehicle but off, a little off-centered to the vehicle." And the rest of the testimony actually contradicts the theory. For example, Fulton went on to say that he was about 25 feet away from Johnson's car, hardly close enough to block it. More importantly, Johnson did not present this argument to the district court (and did not raise it here until his reply brief). His suppression motion is flatly inconsistent with his theory, arguing that "Mr. Johnson was seized for purposes of implicating his Fourth Amendment rights when the police officers forcibly detained and searched him." The district court was not obligated to conclude that Johnson was seized when Fulton pulled into the parking lot.

Since the stop was valid, the frisk was permissible, for Fulton obviously had reason to suspect Johnson of being armed. The government points out that the discovery of crack during the frisk comes within the plain-feel doctrine of *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Johnson responds with the claim that "*Terry* does not permit officers to frisk any and every bump or bulge. A bump or bulge that could not reasonably be a weapon cannot justify a pat-down frisk." That is inconsistent with *Dickerson* and with common sense. A frisk may after all be conducted even when a suspect's clothing exhibits no visible bulges. The limitation imposed by *Dickerson* is that once the officer finds an object on the person of a suspect, he may not palpate it more than is necessary to determine whether it is a weapon. *See, e.g., United States v. Ponce,* 8 F.3d 989, 999 (5th Cir.1993) (removal of folded dollar bills from pocket was inappropriate because the officer could not have thought they were a weapon). Here, Fulton frisked Johnson and felt "a big bulge" in which he "fe[lt] what I immediately recognize[d] to be large, hard objects." He explained, "based on my experience ... I believe[d] what I [was] feeling to be crack cocaine." Fulton did not exceed the permissible contours of a *Terry* frisk.

\* \* \* \*

The judgment of the district court is *Affirmed.*