**John A. RILEY, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 88, 2005.**

Supreme Court of Delaware.

Submitted: Dec. 7, 2005.
Decided: Jan. 9, 2006.

Christopher D. Tease, Esquire, Wilmington, Delaware, for appellant.

Gregory E. Smith, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

HOLLAND, Justice.

The New Castle County grand jury indicted the defendant-appellant, John A. Riley, on the following charges: Possession With Intent to Deliver Xanax;[1] Possession with Intent to Deliver Marijuana;[2] Using a Vehicle for Keeping Controlled Substances;[3] Possession of Xanax not in the Original Container;[4] Possession of Drug Paraphernalia;[5] and two counts of Unlawfully Dealing with a Child.[6]

Riley filed a motion to suppress. The Superior Court held an evidentiary hearing on the motion. The Superior Court granted Riley's motion to suppress statements that he made at the time of his seizure by police, but denied the motion to the extent it sought to exclude drugs and drug paraphernalia found on or about Riley's person.

The trial began on December 2, 2004. At the conclusion of the State's case, Riley moved for judgment of acquittal on the two charges of unlawfully dealing with a child. The Superior Court granted the motion and dismissed those two charges. The jury acquitted Riley of the charges of Using a Vehicle for Keeping Controlled Substances and Possession of Xanax not in the Original Container. The jury found Riley guilty of Possession With Intent to Deliver Xanax, Possession With Intent to Deliver marijuana, and possession of drug paraphernalia. The Superior Court sentenced Riley to a total of five years at Level V, suspended after six months for probation, on those charges.

Riley appeals from the denial of a suppression motion and his conviction and sentence. In this appeal, Riley contends that the Superior Court erroneously denied his motion to suppress the drugs and drug paraphernalia found on his person and in the vehicles because the police did not have a reasonable articulable suspicion for their initial stop. The record supports Riley's contention. Therefore, we have concluded that the judgments of the Superior Court must be reversed.

### Facts

On March 4, 2004, Newark Police Department Officers Young, Anunias, and Bradshaw participated in an undercover "Cops in Shops" program under which they monitored the parking lot of the Suburban Liquor Store for sales of liquor to minors. The officers arrived between 7:00 and 7:30 p.m. and described the parking lot as "well-lit." At approximately 8:00 p.m., a Ford Escort arrived with two female passengers, both of whom appeared underage.

After five to ten minutes, a black Ford Taurus with two passengers parked one or two spaces away from the Escort. Riley exited the vehicle and entered the rear passenger side of the Escort. The officers continued to observe the Escort and noticed the two women turn to face Riley and, while periodically "looking around," apparently engage him in conversation. The officers testified that they believed they saw some type of exchange, although they were unable to identify any particular objects passed by the Escort's occupants.

1. Del.Code Ann. tit. 16, § 4751(b).

2. Del.Code Ann. tit. 16, § 4751(a).

3. Del.Code Ann. tit. 16, § 4755(a)(5).

4. Del.Code Ann. tit. 16, § 4758.

5. Del.Code Ann. tit. 16, § 4771(a).

6. Del.Code Ann. tit. 11, § 1106.

Based upon these observations and prior investigations of adults providing alcohol to minors, officers believed they might have been witnessing a request by the underage girls for the man to purchase them alcohol or, perhaps, a drug transaction. The officers parked behind the Escort to prevent it from driving away, and then exited their car. Officer Young testified that as they approached the two vehicles, the three officers displayed their badges, shined flashlights into the two cars, and identified themselves as police. Officer Anunias testified as follows:

I approached the rear passenger door [of the Escort], I saw Mr. Riley sitting inside with his hands like he was fiddling with something in his lap, I put my badge up to the window and identified myself as a police officer and asked him to show me his hands. He did not. He kept fiddling with a—whatever it was. That's the time I opened the door and asked him to leave the vehicle.

After the officer opened the door, he smelled marijuana and saw a pill bottle on the Escort's floor. Anunias asked Riley where he had his drugs and Riley showed the officer where he had placed marijuana in his pants.

### Standard of Review

Riley argues that the State failed to establish, under both statutory and constitutional law, a threshold of reasonable and articulable suspicion justifying a detention. More specifically, Riley argues that where police, working a "Cops and Shops" detail in Newark, observed Riley enter a vehicle

occupied by what appeared to be two underage females outside a liquor store, and observed non-specific movements inside the vehicle, they lacked reasonable articulable suspicion to justify stopping him. Therefore, Riley submits that all evidence obtained following his illegal seizure was inadmissible.

■■■ In reviewing an evidentiary hearing on a motion to suppress, this Court will defer to the factual findings of the Superior Court unless those findings are clearly erroneous.[7] Once the historical facts are established, the legal issue is whether an undisputed rule of law is violated. Accordingly, this Court reviews *de novo* whether police possessed reasonable articulable suspicion to stop a person.[8]

### Investigative "Terry" Detention

■ The Fourth Amendment of the United States Constitution protects individuals from "unreasonable searches and seizures."[9] The United States Supreme Court interpreted the Fourth Amendment in *Terry v. Ohio*,[10] as allowing "a police officer [to] detain an individual for investigatory purposes for a limited scope and duration, but only if such detention is supported by a reasonable and articulable suspicion of criminal activity."[11] Thus, law enforcement officers may stop and temporarily detain someone on grounds less than probable cause for an arrest without violating the Fourth Amendment.[12]

Such a stop is justified, however, only if "specific and articulable facts ... together with rational inferences," suggest that a

---

7. *Woody v. State,* 765 A.2d 1257, 1261 (Del. 2001).

8. *Purnell v. State,* 832 A.2d 714, 719 (Del. 2003).

9. U.S. Const. amend. IV, *cited in Jones v. State,* 745 A.2d 856, 860 (Del.1999).

10. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

11. *Jones v. State,* 745 A.2d at 861.

12. *Terry v. Ohio,* 392 U.S. 1, 20–21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

suspect is involved in criminal activity.[13] Title 11, section 1902 of the Delaware Code codifies the standards for *"Terry"* stops and temporary detentions under Delaware Law.[14] That section reads, in pertinent part:

§ 1902. Questioning and detaining suspects.

(a) A peace officer may stop any person abroad, or in a public place, who the officer has reasonable ground to suspect is committing, has committed or is about to commit a crime, and may demand the person's name, address, business abroad and destination.

■ This Court has held that the term "reasonable ground" in the Delaware statute has the same meaning as the words "reasonable and articulable suspicion" as used in *Terry* by the United States Supreme Court.[15] In order to satisfy the "reasonable and articulable" standard, the officer must point to specific facts, which viewed in their entirety and accompanied by rational inferences, support the suspicion that the person sought to be detained was in the process of violating the law.[16] The totality of circumstances, as viewed through the eyes of a reasonable, trained officer in the same or similar circumstances, must be examined by both the trial judge and appellate courts to determine if reasonable suspicion has been properly formulated.[17]

### Police Seize Riley

■ The first question to be answered is: when did the police officers "seize" Riley for purposes of the Fourth Amendment? Under *Terry*, a seizure occurs " 'when the officer, by means of physical force or show of authority, has in some way restrained the liberty' of the individual." [18] In *California v. Hodari*,[19] the United States Supreme Court determined that "even when an officer has manifested a 'show of authority,' a seizure within the meaning of the Fourth Amendment further 'requires *either* physical force ... *or*, where that is absent, *submission* to the assertion of authority." [20] In this case, the State's answering brief acknowledges and we conclude that "when police approached the Escort with their badges and flashlights, after having parked their police vehicle behind the Escort so as to prevent it from driving away, a seizure had taken place for purposes of Fourth Amendment analysis." [21]

### Reasonable Articulable Suspicion

■ The next question is: did the police officers have a reasonable and articulable suspicion that criminal activity was taking place when they seized Riley? A reasonable and articulable suspicion is established when an officer can "point to specific and articulable facts which, taken together with rational inferences from

---

13. *Id.* at 21, 88 S.Ct. 1868.

14. *Jones v. State*, 745 A.2d 856, 861.

15. *Id.*

16. *Downs v. State*, 570 A.2d 1142, 1145 (Del. 1990).

17. *Jones v. State*, 745 A.2d at 861.

18. *Jones v. State*, 745 A.2d at 862 (quoting *Terry v. Ohio*, 392 U.S. at 19 n. 16, 88 S.Ct. 1868).

19. *California v. Hodari*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).

20. *Jones v. State*, 745 A.2d at 862 (quoting *California v. Hodari*, 499 U.S. at 626, 111 S.Ct. 1547).

21. *See Quarles v. State*, 696 A.2d 1334, 1337 (Del.1997).

those facts, reasonably warrant th[e] intrusion." [22] "A determination of reasonable suspicion must be evaluated in the context of the totality of the circumstances as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts." [23]

The United States Supreme Court has rejected attempts by the Circuit Courts of Appeal to evaluate and reject "factors in isolation from each other." [24] Both the U.S. Supreme Court and this Court have recognized that "[i]n some instances ... lawful and apparently innocent conduct may add up to reasonable suspicion if the detaining officer articulates 'concrete reasons for such an interpretation.' " [25] This Court has adopted a two-part test for assessing police conduct.[26] "First, courts must look at the totality of the circumstances, 'including objective observations and "consideration of the modes or patterns of operation of certain kinds of lawbreakers.' " Second, courts must consider the inferences and deductions that a trained officer could make which might well elude an untrained person." [27]

### Liquor Store Under Surveillance

The testimony of the officers at the suppression hearing, and the ruling from the trial judge, relied upon a belief that Riley was possibly purchasing alcohol for the underage females. Indeed, the officers were present at the shopping center because of their involvement in the "Cops In Shops" detail. The suspicion that the stop was related to the crime of purchasing alcohol for minors was the basis for the trial judge's ruling:

> It's a close one, but basically, what the second officer said about the pattern or practice of behavior there and what they had seen and how it was identified and what drew their suspicion, I can't say it's unreasonable. He was able to articulate it. And it wasn't off a hunch because he saw the red car, and *people underage who buy alcohol drive red cars.* It wasn't an irrational point to it. So I think there was a basis, a constitutional basis to approach and have the initial confrontation.

The "pattern or practice of behavior" referred to by the trial judge is taken from Officer Anunias' testimony:

> Because we were working Cops In Shops, and we were actually outside the shops that evening. And that vehicle approached, slowed down, stopped, parked, and there were 2 young females in the car. And they drew our attention that they may not be 21 and they may be trying to obtain alcohol, and it fit a scenario that we've seen several times before in "providing" situations.

Riley's opening brief substantially focused on the trial judge's reliance on the stop being related to the "Cops In Shops"

---

**22.** *Jones v. State,* 745 A.2d at 861.

**23.** *Id.*

**24.** *United States v. Arvizu,* 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

**25.** *Harris v. State,* 806 A.2d 119, 121 (Del. 2002); *see also United States v. Sokolow,* 490 U.S. 1, 9, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (finding that although "[a]ny one of [the] factors [considered by police] is not by itself proof of any illegal conduct and is quite consistent with innocent travel ... taken together they amount to reasonable suspicion").

**26.** *Quarles v. State,* 696 A.2d 1334, 1338 (Del. 1997).

**27.** *Harris v. State,* 806 A.2d at 126–27 (quoting *Quarles v. State,* 696 A.2d at 1338 (quoting *U.S. v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981))).

detail and Riley's presence near a liquor store with underage females. Riley argued that the officers could not have objectively suspected that he was engaging in a purchase of alcohol for minors because there was no evidence to suggest that such a crime was underway. Since Riley did not attempt to purchase alcohol, and there was no evidence that he had agreed to make a purchase of alcohol for the minors, Riley submits that the officers' suspicions were merely hunches.

In its answering brief, the State appears to agree with many of Riley's points. On appeal, the State does not rely exclusively on the "Cops In Shops" program to justify the stop of Riley by the police. Instead, the State argues that the stop was justified on the suspicion that a drug transaction was taking place. With regard to reasonable articulable suspicion that a drug sale was taking place, Riley contends that once the particularized attention given to him as a result of the "Cops In Shops" detail is removed from the analysis, the State's case is weakened even further.

The record supports Riley's contention. There was no evidence that the area was the focus of special attention because of drug sales. There was no evidence that the officers had observed a drug sale in that area before the defendant's stop. There was no evidence that the conduct observed was consistent with conduct the officers had observed in prior drug transactions. There was no evidence of any exchange of money or any other item.

### Location Alone Insufficient Suspicion

In this case, the officers cited the location of the two apparently underage women and Riley in the parking lot of a liquor store as a factor that contributed to their suspicions of criminal activity because the offense of providing alcohol to minors sometimes occurs in liquor store parking lots. The United States Supreme Court determined that an individual's presence in a high crime area, without more, is insufficient to establish reasonable suspicion.[28] Nevertheless, the United States Supreme Court determined that presence in a high crime area is a factor that may be considered by police and that a suspect's presence in a high crime area plus his flight from police may be sufficient to establish reasonable suspicion.[29]

### Prior Delaware Decisions

Although Riley's presence in a liquor store parking lot (arguably a location known for the crime of "providing alcohol to minors,") may be a factor police can consider in establishing reasonable suspicion, by itself it is not sufficient to establish reasonable suspicion. In *Cummings v. State*,[30] this Court reviewed facts somewhat similar to those in *Riley*. In *Cummings*, an officer observed two individuals in a vehicle in the parking lot of the Delaware Waste Treatment Plant, which was closed at that time.[31] The men drove their vehicle out of the lot as the officer approached the car.[32] This Court held that on those facts alone, the officer did not

**28.** *Brown v. Texas*, 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). *See also Jones v. State*, 745 A.2d at 871; *State v. Perkins*, 2002 WL 31160326, at *2 (Del.Super.) ("[I]t is well settled that a 'defendant's presence in a high crime area late at night ... [is] alone insufficient to constitute reasonable articulable suspicion.'" (internal citations omitted)).

**29.** *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000).

**30.** *Cummings v. State*, 765 A.2d 945 (Del. 2001)

**31.** *Id.* at 947.

**32.** *Id.* at 947.

have reasonable suspicion sufficient to justify a seizure.[33]

In *Cummings,* we noted that the area of the stop was not a "high crime" area and while the officer had responded to burglar alarms in the area, police were not employing special vigilance because of unusual criminal activity.[34] The vehicle was parked during daylight hours on state property open to the public. We stated that leaving an area upon sighting a police officer is not, in itself, suspicious conduct.[35]

### Other Jurisdictions' Decisions

In *United States v. Johnson,*[36] the United States Court of Appeals for the District of Columbia analyzed a case with facts similar to those found in *Riley.* There, police observed a parked car with two passengers in a high narcotics area.[37] "The officers saw a young woman leaning into the passenger's window and handing Johnson an object, which they could not identify."[38] As the police approached the vehicle, the woman walked away.[39] One officer saw Johnson make a "shoving down motion."[40] The officer ordered Johnson to display his hands, but Johnson did not comply.[41] The officer touched a bulge in Johnson's pants, felt objects he believed to be crack cocaine, and removed the objects.[42]

In *Johnson,* the court ultimately determined that the officer had a reasonable suspicion by the time he touched Johnson's pant leg because, under *Hodari,* Johnson was not seized when the officer ordered him to display his hands because he did not submit to the officer's showing of authority, and his furtive gestures after the officer's display of authority contributed to the officer's reasonable suspicion.[43] However, the court stated that if a seizure had taken place at the time the officer initially displayed his authority, "we doubt very much whether it would have been valid."[44]

In *Riley,* the police could not identify an actual object exchanged, no suspects left the scene upon observing the police, and none of the occupants of the car reacted suspiciously to the police presence before the seizure occurred. If the facts in *Johnson* were insufficient to establish reasonable suspicion before the suspect's furtive gestures after the display of police authority, then the facts in Riley's case were even more insufficient to establish reasonable suspicion. With commendable candor, the State acknowledges that several state appellate courts have declined to find reasonable suspicion for the seizure of automobile drivers and passengers in circumstances similar to the facts presented in Riley's case.[45]

33. *Id.* at 947.

34. *Id.* at 949.

35. *Id.* at 949.

36. *United States v. Johnson,* 212 F.3d 1313 (D.C.Cir.2000).

37. *Id.* at 1314.

38. *Id.* at 1314–15.

39. *Id.* at 1315.

40. *Id.* at 1315.

41. *Id.*

42. *Id.*

43. *Id.* at 1316–17.

44. *Id.* at 1316.

45. *See State v. Jestice,* 177 Vt. 513, 861 A.2d 1060, 1064 (2004) (reversing denial of motion to suppress where officer acknowledged that defendant whom he observed reaching down in a parked car at 2:00 a.m. in the parking lot of a trail head "could have been reaching down for a wide variety of reasons having nothing to do with criminal activity"); *Commonwealth v. Mulholland,* 794 A.2d 398, 401–

### Riley's Stop Improper

In this case, the events occurred at approximately 8:00 p.m. Other vehicles were in the shopping center parking area, although it wasn't busy. Other stores in the area were open to the public for business. Riley was not seen carrying anything as he entered the females' vehicle. The officers did not observe any actual transactions between the occupants of the vehicle. No money was seen changing hands. No items were seen being exchanged. Riley never exited the females' vehicle and never proceeded toward the liquor store.

We have already explained why Riley's mere presence in a shopping center being monitored for underage liquor sales does not mean the police could assume such a transaction was occurring. There was no articulable suspicion of criminal activity merely because the females were turning and speaking with Riley. Similarly, there was no articulable suspicion of criminal activity merely because the occupants of the vehicle were looking around the park-

ing lot. The observations of the officers were all consistent with innocent behavior.

The record reflects that, not only did police officers not observe a transaction, but also that upon approaching the vehicle, the officers acknowledged that no crime involving the illegal purchase of alcohol could even have occurred. Officer Young testified that if the door to the car had been opened and nothing was seen, the occupants would be "advised that we're conducting an investigation, we observed what we thought was suspicious activity, given them a polite apology, and they're done." Officer Anunias, the senior of the two officers, testified:

> [I]f I didn't see anything when I walked up that was suspicious, had Mr. Riley put up his head and we had had a conversation and he said, "we're waiting for another friend to come to us, we would have sent them on their way. That would have been the end of the stop.

Officer Anunias, admitted that at that time he approached and stopped Riley, there was "no crime there."

02 (Pa.Super.Ct.2002) (affirming grant of suppression motion where officer approached a car in the parking lot during the early evening hours; officer did not observe any motor vehicle code violation; officer did not observe any furtive movements; officer only noticed scent of marijuana after questioning); *People v. Greer,* 860 P.2d 528, 531 (Colo.1993) (affirming grant of suppression motion—"an obscured view of a person bending her arm and the subsequent act of a man putting money in his pocket is not [sufficiently] suspicious"); *Gano v. State,* 599 So.2d 759, 759–60 (Fla. Dist.Ct.App.1992) (reversing denial of motion to suppress officer observed two males sitting in a vehicle in a parking lot at 1:00 a.m. and passenger pushed an unknown object beneath his seat when the officer approached); *People v. Pizzo,* 144 A.D.2d 930, 534 N.Y.S.2d 249, 250 (1988) (reversing denial of motion to suppress where officer observed car parked in shopping mall parking lot at 2:00 a.m. and one occupant of the car went to a pay phone to place a call and police asked for identifica-

tion); *Smith v. State,* 759 S.W.2d 163, 164, 165 (Tex.App.1988) (reversing denial of motion to suppress where police observed man in a parking lot of a club standing next to a parked car exchange something with the occupant of the vehicle, who upon seeing the marked police vehicle began walking towards the club; "police officers acted improperly in detaining appellant because his actions were as consistent with innocent activity as with criminal activity"); *Green v. State,* 744 S.W.2d 313, 314 (Tex.App.1988) (reversing denial of motion to suppress where police observed two cars in the parking lot of a closed cafeteria where driver of second vehicle entered other car and then exited and drove off; "If the facts of this case were sufficient grounds for a detention, every person who meets a friend in a parking lot to exchange football tickets would be subject to a police investigation. Where the events observed are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful.").

The police officers testified that the facts they possessed at the time of the stop did not provide a proper legal basis for detaining Riley. Thus, the record reflects that the police stopped Riley to question him without first formulating the reasonable articulable suspicion of criminal activity that permits such a stop. Consequently, the Superior Court erroneously denied Riley's motion to suppress the physical evidence that was seized as a result of the illegal stop.

## Conclusion

The judgments of the Superior Court are reversed. This matter is remanded for further proceedings in accordance with this opinion.