[Cite as *State v. Roby*, 2017-Ohio-7331.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 16AP-342 |
| v. | : | (C.P.C. No. 15CR-3259) |
| Ryan M. Roby, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on August 24, 2017

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellant. **Argued:** *Seth L. Gilbert.*

**On brief**: *Yeura R. Venters*, Public Defender, and *Timothy E. Pierce*, for appellee. **Argued:** *Timothy E. Pierce.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiff-appellant, State of Ohio, appeals the April 27, 2016 decision and entry of the Franklin County Court of Common Pleas granting the motion of defendant-appellee, Ryan M. Roby, to suppress evidence. For the following reasons, we reverse.

**I. Facts and Procedural History**

{¶ 2} On July 2, 2015, a Franklin County Grand Jury filed an indictment charging defendant with two criminal counts: one count of possession of cocaine, in violation of R.C. 2925.11, a felony of the fifth degree; and one count of tampering with evidence, in violation of R.C. 2921.12, a felony of the third degree.

{¶ 3} On October 26, 2015, defendant filed a motion to suppress/exclude testimony. On November 16, 2015, the state filed a memorandum contra defendant's

motion to suppress. On March 29, 2016, the state filed a supplemental memorandum contra motion to suppress.

{¶ 4} On April 26, 2016, the trial court held a suppression hearing. The parties stipulated to the admission of three exhibits in lieu of presenting testimony. The three exhibits included copies of a handwritten police report prepared by Officer John Kim of the City of Bexley Police Department, and a typed narrative supplement prepared by Officer Kim.

{¶ 5} On April 27, 2016, the trial court filed a decision and entry granting defendant's motion to suppress evidence and exclude testimony.

## II. Assignment of Error

{¶ 6} The state appeals and assigns the following single assignment of error for our review:

> The trial court committed reversible error in sustaining Roby's motion to suppress.

## III. Discussion

{¶ 7} In its single assignment of error, the state contends the trial court erred in granting defendant's motion to suppress. Specifically, the state contends that (1) defendant voluntarily abandoned the contraband before he was seized, thereby relinquishing any privacy interest in the contraband, (2) the arrest did not violate R.C. 2935.10(B), (3) even if the arrest violated R.C. 2935.10(B), suppression was not a proper remedy, and (4) even if the arrest was unconstitutional, suppression was not necessary to deter future police misconduct.

### A. Standard of Review

{¶ 8} "The review of a motion to suppress is a mixed question of law and fact." *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, ¶ 32, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. In evaluating the motion to suppress, the trial court acts as the finder of fact and, therefore, is in the best position to resolve factual questions and evaluate the credibility of witnesses. *Burnside* at ¶ 8. Therefore, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the

applicable legal standard." *Id.  See also State v. Johnson*, 10th Dist. No. 13AP-637, 2014-Ohio-671, ¶ 6 ("We apply a de novo standard in determining whether the trial court properly denied appellant's motion to suppress.").

{¶ 9}    The trial court made the following factual findings, which we must accept as true if they are supported by competent, credible evidence:

> On Friday, August 29, 2014, at approximately 10:50 a.m., Officer John Kim of the Bexley Police Department observed [defendant] walking northbound on N. Cassady Avenue at the intersection of Bellwood Avenue. Defendant was walking with a female, later identified as Melissa Laurie. Officer Kim, for reasons unexplained, knew [defendant] possibly had an active warrant out of the City of Whitehall, located in Franklin County, Ohio.

> Officer Kim verified the warrant via the radio dispatcher, and executed a stop of [defendant] and Laurie at N. Cassady Avenue and Avalon Place. Upon approach, "[defendant] was informed that he had a warrant and was under arrest." (Ex. 2.) Officer Kim observed [defendant] attempt to get behind Ms. Laurie and hand something off to her. Officer Glick arrived at the scene and assisted Officer Kim in placing [defendant] in handcuffs. Prior to Glick's arrival, Kim observed Laurie throw something toward the front of the marked cruiser. Officer Glick later inspected the thrown item(s), and recovered two straws and "a bindle of a white powdery substance." (Ex. 3.) The white substance field-tested positive for heroin.

> There is no allegation in the stipulated police reports that Defendant and Laurie committed a criminal offense while Officer Kim observed [defendant] and verified the warrant.

(Footnotes omitted.) (Decision and Entry at 1-2.)  In its findings of fact, the trial court noted that "[t]he Parties agree a bench warrant was issued by Whitehall Mayor's Court, on or about September 4, 2014, in the Defendant's name, for failure to pay a fine and costs in Whitehall Mayor's Court Case No. 14MCR-00182, as part of Defendant's sentence for Petty Theft, in violation of Whitehall City Ordinance 537.07(A)(1)." (Decision and Entry at 2, fn. 2.) The state attached to its supplemental memorandum contra the motion to suppress a copy of a bench warrant from the Whitehall Mayor's Court in case No. 14MCR-00182 that provided in pertinent part as follows:

> Chief of Police of said City of Whitehall, greeting: The State of Ohio, Franklin County, SS. It appearing to the court this day

> 16 July 2014, that one Ryan M Roby * * * has failed to pay fine and cost (Petty Theft 537.07A1).
>
> These therefore are to command you to take the said Ryan M Roby if he/she be found in your county or if he/she is not found in your county, that you pursue after him/her in any county in this state, and take and safely keep him/her so that you have his/her body forthwith before said court.
>
> Given under my hand and official seal, this day July 16, 2014.
>
> Bond $ 375.00 cash only. No surcharge. If not paid must serve 20 days. No court appearance necessary.

(Supp. Memo. Contra, exhibit.)  Furthermore, the trial court noted the parties agreed that the location where Officer Kim stopped defendant and Laurie was outside the limits of the city of Bexley in the city of Columbus.

### B.  Applicable Law

{¶ 10} The Fourth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or other things to be seized."  Article I, Section 14 of the Ohio Constitution contains a nearly identical provision:

> The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized.

*See also* R.C. 2933.22(A) and Crim.R. 41(C).

{¶ 11} Historically, the protections afforded by Article I, Section 14 of the Ohio Constitution have been construed as coextensive with the protections of the Fourth Amendment of the United States Constitution.  *State v. Geraldo*, 68 Ohio St.2d 120, 125-26 (1981) ("We are disinclined to impose greater restrictions in the absence of explicit state constitutional guarantees protecting against invasions of privacy that clearly

transcend the Fourth Amendment. * * * It is our opinion that the reach of Section 14, Article I, of the Ohio Constitution * * * is coextensive with that of the Fourth Amendment."); *State v. Robinette*, 80 Ohio St.3d 234, 239 (1997) (stating that courts "should harmonize * * * interpretation of Section 14, Article I of the Ohio Constitution with the Fourth Amendment, unless there are persuasive reasons to find otherwise"); *State v. Jones*, 88 Ohio St.3d 430, 434 (2000), *modified in State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, syllabus. However, it is well-recognized that states may "rely on their own constitutions to provide broader protection for individual rights, independent of protections afforded by the United States Constitution." *Robinette* at 238. *See Arnold v. Cleveland*, 67 Ohio St.3d 35, 38 (1993), paragraph one of the syllabus ("In the areas of individual rights and civil liberties, the United States Constitution, where applicable to the states, provides a floor below which state court decisions may not fall."). Thus, in certain circumstances, the Supreme Court of Ohio has construed Article I, Section 14 of the Ohio Constitution as providing greater protection than the Fourth Amendment to the United States Constitution. *Brown* at ¶ 22; *State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, ¶ 23. *See Robinette* at 238 (noting that a "state may impose greater restrictions on police activity pursuant to its own state constitution than is required by federal constitutional standards").

{¶ 12} "The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991), citing *Katz v. United States*, 389 U.S. 347, 360 (1967). "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Id.* In keeping with this principle, both the Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and Article I, Section 14 of the Ohio Constitution prohibit the government from conducting warrantless searches and seizures, subject to certain exceptions. *Arizona v. Gant*, 556 U.S. 332, 338 (2009), quoting *Katz* at 357 (" '[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' "); *State v. Limoli*, 10th Dist. No. 11AP-924, 2012-Ohio-4502, ¶ 20, citing *State v. Fowler*, 10th Dist. No. 10AP-658, 2011-Ohio-3156, ¶ 11-12.

{¶ 13} Finally, " '[a] seizure is equivalent to an arrest when: (1) there is an intent to arrest; (2) under real or pretended authority; (3) accompanied by an actual or constructive seizure or detention; and (4) which is so understood by the person arrested.' " *State v. Westover*, 10th Dist. No. 13AP-555, 2014-Ohio-1959, ¶ 18, quoting *State v. Taylor*, 106 Ohio App.3d 741, 749 (2d Dist.1995), citing *State v. Barker*, 53 Ohio St.2d 135 (1978), syllabus.[1]

## C. Analysis

### 1. Point of Seizure

{¶ 14} The state admits that Officer Kim ultimately seized defendant, but contends that "[defendant] was not seized until [Officer] Kim physically detained him, which occurred *after* [defendant] passed the drugs to Laurie." (Emphasis sic.) (State's Brief at 11.) However, defendant contends that "Officer Kim's initial encounter with [defendant] and [Laurie] was nonconsensual." (Defendant's Brief at 9.)

{¶ 15} The trial court did not expressly state when the seizure of defendant occurred. However, the court went on to analyze whether the "execution of the Whitehall warrant" and the "resulting search, seizure and arrest" violated R.C. 2935.10(B) and Article I, Section 14 of the Ohio Constitution. (Decision and Entry at 4-5.) From this analysis, it is clear to us the trial court found the seizure occurred upon Officer Kim's

---

[1] We note that "not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 (1968), fn. 16. An encounter between a police officer and a member of the public is consensual if a reasonable person would feel free to disregard the officer's questions or terminate the encounter and go about his or her business. *Florida v. Bostick*, 501 U.S. 429, 434 (1991), citing *California v. Hodari D.*, 499 U.S. 621, 628 (1991). Because a consensual encounter does not involve a restraint on a person's liberty or privacy, such encounter does not constitute a seizure for purposes of the Fourth Amendment. *Florida v. Royer*, 460 U.S. 491, 498 (1983) (plurality opinion) ("If there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed."); *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, ¶ 20 (10th Dist.); *State v. Moyer*, 10th Dist. No. 09AP-434, 2009-Ohio-6777, ¶ 13. "A police officer may lawfully initiate a consensual encounter without probable cause or a reasonable, articulable suspicion that an individual is currently engaged in criminal activity or is about to engage in such conduct." *Westover* at ¶ 15, citing *Mendenhall* at 556. "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ask to examine the individuals identification, and request consent to search his or her luggage, [provided they] do not convey a message that compliance with their requests is required." (Citations omitted.) *Bostick* at 434-35. "Generally, when a police officer merely approaches and questions persons seated within parked vehicles, a consensual encounter occurs that does not constitute a seizure so as to require reasonable suspicion supported by specific and articulable facts." *Jones*, 2010-Ohio-2854, ¶ 20, citing *State v. McClendon*, 10th Dist. No. 09AP-554, 2009-Ohio-6421, ¶ 8. Here, however, it was not argued that Officer Kim's encounter with defendant was consensual.

initial stop of defendant and informing him of the warrant and that he was under arrest. From our own review of the evidence, we conclude the evidence supports the finding that the seizure occurred upon Officer Kim's initial stop of defendant and informing him of the warrant and that he was under arrest.[2]

{¶ 16} We begin our review by analyzing Officer Kim's initial encounter with defendant. In his handwritten report, Officer Kim wrote that defendant and Laurie "were stopped." (Ex. 2.)  In his typewritten report, Officer Kim wrote that "I was able to catch up to them and get them stopped on Cassady at Avalon." (Ex. 3.)  Officer Kim also wrote that "[u]pon initial contact with [defendant] I asked him to stop so that I could talk with him." (Ex. 3.) The trial court made the factual finding that Officer Kim "executed a stop of [d]efendant and Laurie * * *.  Upon approach, '[defendant] was informed that he had a warrant and was under arrest.' " (Decision and Entry at 2, quoting Ex. 2.)

{¶ 17} Here, the record reflects that Officer Kim observed defendant and Laurie walking. The record also reflects that as a result of their initial encounter with Officer Kim, defendant and Laurie halted and remained where they were. Officer Kim's statement that defendant and Laurie "were stopped" in addition to his statement that he was able to "get them stopped" supports a finding that the encounter was nonconsensual.

{¶ 18} More significantly, Officer Kim's statement informing defendant that he was under arrest constituted an obvious show of authority such that a reasonable person would not have felt free to leave. The state concedes as much, but contends that defendant did not submit to the show of authority because he moved behind Laurie and passed an object to her. (State's Brief at 10.)  Therefore, the state argues that Officer Kim's act of telling defendant he was under arrest was an attempted seizure, and defendant was not actually seized until Officer Kim "physically detained him." (State's Brief at 11.)

{¶ 19} "A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned." *Brendlin v. California*, 551 U.S. 249, 254 (2007), citing *California v. Hodari D.*, 499 U.S. 621, 626, n.

---

[2] Accordingly, because the seizure occurred prior to defendant handing the contraband to Laurie, it is not necessary for us to consider abandonment as the state suggests. Furthermore, the trial court did not rule on the issue of abandonment. Thus, we refrain from doing so at this time.

2 (1991).[3] "[W]hat may amount to submission depends on what a person was doing before the show of authority: a fleeing man is not seized until he is physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away." *Id.* at 262. *See United States v. Lowe*, 791 F.3d 424, 431 (3d Cir.2015) (finding that "[w]hen a suspect flees after a show of authority, the moment of submission is often quite clear: It is when the fleeing suspect stops, whether voluntarily or as a result of the application of physical force").

{¶ 20} Here, although the trial court found that defendant "attempt[ed] to get behind [Laurie]" after he was informed that there was a warrant for his arrest, neither the record nor the trial court's findings reflect that defendant attempted to depart from the area or flee from Officer Kim. (Decision and Entry at 2.) As the state notes, courts have found that "some movement may be consistent with submitting to an officer's authority." (Emphasis omitted.) (State's Reply Brief at 7.) *See United States v. Wilson*, 953 F.2d 116, 123 (4th Cir.1991) ("Physical movement alone does not negate the possibility that a seizure may nevertheless have occurred."); *State v. Smith*, 286 Kan. 402, 419 (2008) (finding that defendant submitted to authority and was seized even though she "moved from the vehicle to sit on nearby steps rather than remaining in the car" because "she did not walk away; she remained at or near the physical focal point of the investigation in a passive submission to the show of authority").

{¶ 21} The state cites two cases, *United States v. Mosley*, 743 F.3d 1317 (10th Cir.2014), and *United States v. Johnson*, 212 F.3d 1313 (D.C.Cir.2000), in support of its argument that defendant did not submit to the show of authority. In *Mosley*, the defendant was ordered to show his hands, but instead "began making furtive motions consistent with hiding—or worse, retrieving—a gun." *Mosley* at 1327. In *Johnson*, 212 F.3d 1313, the defendant was ordered by an officer to raise his hands, but instead of

---

[3] In *Hodari D.*, Hodari was with a group who fled after seeing police officers approaching in an unmarked car. The officers were suspicious and chased the members of the group. One of the officers saw Hodari throw something that appeared to be a small rock. The officer tackled Hodari, handcuffed him, and later discovered that the rock Hodari threw was crack cocaine. Hodari moved to suppress the evidence relating to the cocaine. The United States Supreme Court reviewed the issue of "whether, at the time he dropped the drugs, Hodari had been 'seized' within the meaning of the Fourth Amendment." *Id.* at syllabus. The court concluded "assuming that [the officer's] pursuit in the present case constituted a 'show of authority' enjoining Hodari to halt, since Hodari did not comply with that injunction he was not seized until he was tackled. The cocaine abandoned while he was running was in this case not the fruit of a seizure, and his motion to exclude evidence of it was properly denied." *Id.* at 629.

complying, the defendant made " 'shoving down' motions, gestures that were the very opposite of complying with [the officer's] order, and which a reasonable officer could have thought were actually suggestive of hiding (or retrieving) a gun." *Id.* at 1316-17. In both cases, the courts found that the defendant's actions in appearing to conceal a weapon did not demonstrate submission to authority sufficient for a seizure to have occurred. However, unlike in those cases, the record in this case does not reflect that Officer Kim believed that defendant was taking actions consistent with hiding or retrieving a weapon. Therefore, we do not find those cases dispositive in the present matter. Accordingly, we conclude that the evidence supports the finding that defendant was seized prior to his act of passing the item to Laurie.

### 2. Legality of the Seizure

{¶ 22} Next, we consider whether Officer Kim's seizure of defendant was lawful pursuant to R.C. 2935.10. Here, the trial court found that the "execution of the Whitehall warrant, by a Bexley peace officer, in the City of Columbus, without any evidence or indication of additional suspected criminal conduct, violates Art. I, Sec. 14 [of the Ohio Constitution], and section 2935.10(B) of the Revised Code." (Decision and Entry at 4.)

{¶ 23} R.C. 2935.10 provides as follows:

> (A) Upon the filing of an affidavit or complaint as provided by section 2935.09 of the Revised Code, if it charges the commission of a felony, such judge, clerk, or magistrate, unless he has reason to believe that it was not filed in good faith, or the claim is not meritorious, shall forthwith issue a warrant for the arrest of the person charged in the affidavit, and directed to a peace officer; otherwise he shall forthwith refer the matter to the prosecuting attorney or other attorney charged by law with prosecution for investigation prior to the issuance of warrant.
>
> (B) If the offense charged is a misdemeanor or violation of a municipal ordinance, such judge, clerk, or magistrate may:
>
> (1) Issue a warrant for the arrest of such person, directed to any officer named in section 2935.03 of the Revised Code but in cases of ordinance violation only to a police officer or marshal or deputy marshal of the municipal corporation;
>
> (2) Issue summons, to be served by a peace officer, bailiff, or court constable, commanding the person against whom the affidavit or complaint was filed to appear forthwith, or at a

fixed time in the future, before such court or magistrate. Such summons shall be served in the same manner as in civil cases.

{¶ 24} The state contends that defendant's arrest did not violate R.C. 2935.10(B). Specifically, the state contends that references in R.C. 2935.10(B) to "the offense" and "such judge, clerk, or magistrate" require that the reader refer to R.C. 2935.10(A). The state then points to language in R.C. 2935.10(A) referring to R.C. 2935.09 to argue that "R.C. 2935.09 and R.C. 2935.10 must be read in pari materia with each other." (State's Brief at 15.) R.C. 2935.09 provides in pertinent part:

(A)  As used in this section, "reviewing official" means a judge of a court of record, the prosecuting attorney or attorney charged by law with the prosecution of offenses in a court or before a magistrate, or a magistrate.

(B)  In all cases not provided by sections 2935.02 to 2935.08 of the Revised Code, in order to cause the arrest or prosecution of a person charged with committing an offense in this state, a peace officer or a private citizen having knowledge of the facts shall comply with this section.

(C)  A peace officer who seeks to cause an arrest or prosecution under this section may file with a reviewing official or the clerk of a court of record an affidavit charging the offense committed.

(D)  A private citizen having knowledge of the facts who seeks to cause an arrest or prosecution under this section may file an affidavit charging the offense committed with a reviewing official for the purpose of review to determine if a complaint should be filed by the prosecuting attorney or attorney charged by law with the prosecution of offenses in the court or before the magistrate.

{¶ 25} Following from this, the state argues that both R.C. 2935.09 and 2935.10 govern arrest warrants sought by either a peace officer or private citizen against a person who is charged with committing an offense. Therefore, the state argues R.C. 2935.10(B) does not apply here because the warrant at issue in this case was not an arrest warrant alleging that defendant had committed an offense, but rather a bench warrant alleging that defendant failed to pay a fine that was imposed as part of a sentence for theft in Whitehall Mayor's Court. Instead, the state contends that the warrant is governed by R.C. 2935.02, which provides in pertinent part as follows:

> If an accused person flees from justice, or is not found in the county where a warrant for his arrest was issued, the officer holding the same may pursue and arrest him in any county in this state, and convey him before the magistrate or court of the county having cognizance of the case.

{¶ 26} We agree with the state that R.C. 2935.10 must be read in pari materia with R.C. 2935.09. *State ex rel. Evans v. Columbus Dept. of Law*, 83 Ohio St.3d 174, 175 (1998), citing *State ex rel. Strothers v. Turner*, 79 Ohio St.3d 272, 273 (1997) ("R.C. 2935.09 * * * must be read *in pari materia* with R.C. 2935.10, which prescribes the subsequent procedure to be followed."). Reading R.C. 2935.10 in pari materia with R.C. 2935.09, it is evident that these statutes provide for the procedure for causing the arrest of a person charged with committing an offense. R.C. 2935.09(B) describes the process for a peace officer or private citizen to file an affidavit "in order to cause the arrest or prosecution of a person *charged* with committing an offense in this state." (Emphasis added.) R.C. 2935.10(A) describes the process for issuing a warrant for the arrest of a "person *charged* in the affidavit" if such affidavit "*charges* the commission of a felony." (Emphasis added.) R.C. 2935.10(B) similarly describes the process "[i]f the offense *charged* is a misdemeanor or violation of a municipal ordinance." (Emphasis added.) Thus, both R.C. 2935.09 and 2935.10 describe the process for seeking an arrest upon the charging of a person, instead of the process for seeking the arrest of a person who has failed to abide by the terms of his or her sentence, as is the case here. Thus, we agree with the state that R.C. 2935.10(B)(1) does not govern the warrant at issue in this case.

{¶ 27} Before us the parties raised and argued several other statutes. As noted above, the state argues that R.C. 2935.02 controls and supports Officer Kim's actions. Defendant asserts that if R.C. 2935.10 does not apply, R.C. 1905.08 similarly prohibits an officer from executing an arrest warrant issued by a mayor's court for a municipal violation outside the jurisdiction of the mayor's court. Defendant also asserts the state violated R.C. 2935.03(D). The parties did not, however, raise or argue these positions before the trial court, and the trial court did not rule on the same.[4] Therefore, we decline at this time to opine regarding the same.

---

[4] We note that neither party raised before the trial court R.C. 2949.09 as well as R.C. 2931.01, and the trial court did not rule on the same.

{¶ 28} Furthermore, we decline at this time to opine regarding the court's finding that the search, seizure, and arrest violated Article I, Section 14 of the Ohio Constitution. We are mindful of the Supreme Court of Ohio's holding that "Article I, Section 14 of the Ohio Constitution affords greater protection than the Fourth Amendment against searches and seizures conducted by members of law enforcement who lack authority to make an arrest" and that following from this, the court has found that a "stop for a minor misdemeanor offense made by a township police officer without statutory authority to do so violates Article I, Section 14 of the Ohio Constitution." *State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, ¶ 23. *Compare State v. Jones*, 121 Ohio St.3d 103, 2009-Ohio-316 (finding that where the extraterritorial stop is founded on independent probable cause, there is no violation of the Fourth Amendment). Nevertheless, the trial court's finding of a constitutional violation is based on its finding that Officer Kim did not have authority, pursuant to R.C. 2935.10(B), to seize defendant, and we have now found that R.C. 2935.10(B) does not apply.

{¶ 29} In conclusion, we hold the trial court erred in finding that the execution of the arrest warrant was unlawful pursuant to R.C. 2935.10(B)(1). On remand, the trial court, in its discretion, may seek additional briefing or hold additional hearings regarding the applicability of other statutes. If it chooses to reconsider the statutory question, the trial court may also reconsider the constitutional question.

{¶ 30} Accordingly, we sustain the state's single assignment of error.

IV. **Conclusion**

{¶ 31} Having sustained the state's single assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand this matter for further proceedings consistent with this decision and law.

*Judgment reversed*
*and cause remanded.*

SADLER and LUPER SCHUSTER, JJ., concur.

———————————