Jason A. CUMMINGS, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 428, 1999.

Supreme Court of Delaware.

Submitted: Nov. 28, 2000.
Decided: Jan. 4, 2001.

---

Joseph A. Hurley, Esquire, Wilmington, Delaware, for Appellant.

Timothy J. Donovan, Jr., Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, for Appellee.

Before: WALSH, BERGER, and STEELE, Justices.

WALSH, Justice.

This is an appeal by a juvenile from a determination of delinquency in the Family Court based on the offenses of possession with intent to deliver marijuana, maintaining a vehicle for the purpose of the transportation of marijuana and possession of drug paraphernalia. At trial, the defendant unsuccessfully moved to suppress the evidence seized from his person and automobile on the ground that the police had no legal basis to detain him. We conclude that the detention of the defendant lacked a reasonable articulable basis for suspicion of criminal activity and that the subsequent search of his person and automobile was illegal. Accordingly, we reverse.

I

On September 8, 1998, at approximately 6:50 p.m., Trooper Edward Sebastianelli of the Delaware State Police was on routine patrol in the vicinity of the Delaware Waste Treatment Plant located near the intersection of Lambsons Lane and Pigeon Point road in New Castle County. As he drove by the parking lot he observed the defendant, Jason A. Cummings[1] ("Cummings"), and a companion sitting in a parked vehicle in the parking lot. The plant was closed and the defendant's car was the only car in the lot. It was daylight and the trooper apparently had a clear view of Cummings and his vehicle. The trooper found these circumstances suspicious and decided to enter the lot to investigate. As he approached the vehicle, he made no other significant observations. The trooper drove in the general direction of Cummings with the intent to make a U-turn to come up behind his vehicle, but Cummings apparently decided to leave the lot and passed the trooper on the way out. At the hearing, the trooper testified:

> The fact that they pulled out immediately upon my entering the parking lot, I thought—felt that to be suspicious enough to warrant a stop to investigate the activity that was going on.

The officer later testified that it was not until he passed in front of Cummings' vehicle, in the parking lot, that the vehicle left.

Although Cummings' vehicle was parked in a public area not far from waste disposal bins available for use at all hours, the officer testified that the vehicle's presence "was a little suspicious [and] I wanted to question the driver in regard to his identity and his business being there." The officer followed the Cummings vehicle onto Lambson's Lane and followed it for two-tenths of a mile. He observed no traffic violations or other suspicious activity but eventually activated his emergency lights to stop the vehicle.

After stopping the vehicle, the officer requested the driver, Cummings, to exit the vehicle for questioning as to "what they were doing in the parking lot there." The reply was that "they were just sitting there talking." The officer then decided, "for safety reasons," to perform a pat-down search of Cummings. Noticing a bulge in Cummings' left front pants pocket which he believed "to be possibly a package of marijuana," the officer asked what it was. Cummings removed the package from his pocket and opened it to reveal three small plastic bags of marijuana. Cummings was handcuffed and placed in the patrol vehicle and the passenger was also handcuffed. A search of the vehicle revealed 12 other small bags of marijuana. Cummings was subsequently arrested on charges of possession with intent to deliver marijuana and use of his vehicle for that

1. A pseudonym adopted by the Court pursuant to Supreme Court Rule 7(d).

purpose, as well as possession of drug paraphernalia.

## II

Cummings' claim in the Family Court, repeated here, was that the officer bottomed his suspicion on the movement of a vehicle after the driver became aware of the officer's presence. This level of suspicion, it was argued, is not sufficient to provide a basis for detention under Delaware law. We review the Family Court's rejection of that contention *de novo,* since it involved the application of legal precepts to facts essentially undisputed. *See Jones v. State,* Del.Supr., 745 A.2d 856, 860 (1999).

We are here concerned with the validity of a detention, not an arrest, because, concededly, the officer had no ground to effect an arrest until he discovered the presence of drugs, after the defendant was stopped and questioned. In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court held that law enforcement officers may stop and temporarily detain persons on less than the probable cause sufficient for a lawful arrest without violating the Fourth Amendment. Such a stop is justified if "specific and articulable facts, . . . together with all rational inferences," suggest that a suspect was involved in criminal activity. *Id.* at 21. *Terry* further permits a protective frisk of the detainee for weapons for the officer's safety. *See id.* at 26.

In *Jones v. State,* Del.Supr., 745 A.2d 856 (1999), this Court examined at length the basic justification for police de-

tention under both Federal and State constitutional norms. We there noted that the standards for investigating stops and detentions have been codified under Delaware law in 11 *Del. C.* § 1902 [2] and that the term "reasonable ground" contained in Section 1902(a) has the same meaning as reasonable and articulable suspicion. *See id.* at 861. The threshold of "reasonable and articulable suspicion" under either constitutional or statutory standards requires the officer to point to specific facts, which viewed in their entirety, accompanied by rational inferences, support the suspicion that the person sought to be detained was in the process of violating the law. *See Downs v. State,* Del. Supr., 570 A.2d 1142, 1145 (1990). The totality of circumstances, as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, must be examined to determine if reasonable suspicion has been properly formulated. *See United States v. Sokolow,* 490 U.S. 1, 8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Jones,* 745 A.2d at 861.

In *Jones,* this Court found a police stop unreasonable where the defendant was ordered to stop and remove his hands from his pockets by a police officer who encountered the defendant in a high drug activity area while responding to an anonymous complaint of a suspicious black man wearing a blue coat. We determined that the anonymous tip was insufficient to constitute reasonable suspicion without some evidence to corroborate it. *See Jones,* 745 A.2d at 870. Although Jones, a black male, was wearing a blue coat, the officer testified that he did not see the defendant engage in any suspicious activity before Jones was asked to stop. *See id.* The

**2.** § 1902. Questioning and detaining suspects.

(a) A peace officer may stop any person abroad, or in a public place, who the officer has reasonable ground to suspect is committing, has committed or is about to commit a crime, and may demand the person's name, address, business abroad and destination.

(b) Any person so questioned who fails to give identification or explain the persons's

actions to the satisfaction of the officer may be detained and further questioned and investigated.

(c) The total period of detention provided for by this section shall not exceed 2 hours. The detention is not an arrest and shall not be recorded as an arrest in any official record. At the end of the detention the person so detained shall be released or be arrested and charged with a crime.

officer's observations added nothing to the anonymous caller's unsupported statement that Jones was acting suspiciously. *See id.* Moreover, we held that the defendant's presence in a high crime area late at night was alone insufficient to constitute reasonable articulable suspicion. *See id.* at 871.

█ In our view, the stop here under review fails under the standards articulated in *Jones* for several reasons. The area of the stop was not considered by the officer to be a "high crime" area. Although the officer testified that he had responded to that area for burglar alarms and recovery of stolen motor vehicles, there is no indication that the police were employing special efforts and vigilance because of unusual criminal activity. Cummings' vehicle was parked during daylight hours on State owned property, which is open to the public and includes recycling bins for trash disposal. Furthermore, while flight from the police may be an element in the formation of reasonable suspicion, *see Illinois v. Wardlow,* 528 U.S. 119, 124–25, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), merely leaving the scene upon the approach, or the sighting, of a police officer is not, in itself and standing alone, suspicious conduct. A citizen is not required to remain in a fixed location merely upon approach of a police officer. Here, there is no question that Cummings left the scene without undue haste and, indeed, the officer observed no traffic or vehicle violations while he followed Cummings' vehicle for two tenths of a mile.

█ We conclude that the officer here acted on little more than a hunch, or in his words that he was "a little suspicious," in stopping Cummings' vehicle. While the police may properly employ hunches to investigate, more is required to detain a citizen in a public place. In the absence of a reasonable and articulable suspicion of wrongdoing, Cummings' detention was not authorized.

III

█ The appellant also contends that the officer's search of Cummings after he was stopped was unreasonable since the officer had failed to articulate a risk that "his safety or that of others was in danger." *Robertson v. State,* Del.Supr., 596 A.2d 1345, 1352 (1991) (quoting *Terry,* 392 U.S. at 27, 88 S.Ct. 1868). While we agree that the officer failed to articulate any risk beyond that attendant upon a routine motor vehicle traffic stop, it is unnecessary to dwell upon the merits of the search itself. Our holding that the detention in this case was unauthorized invalidates any further police contact and any evidence seized as a result must be suppressed. In the absence of a showing that the police had an independent source for the evidence, or that its discovery would have been inevitable, the seizure of the evidence is fatally tainted. *See Jones,* 745 A.2d at 856.

The judgment of the Family Court is REVERSED and the matter REMANDED for further proceedings consistent with this decision.