IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No.: 1701000447 |
| | ) | |
| KONSTANTINO P. PAPANICOLAS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Benjamin S. Gifford, IV, Esq.                Kevin B. Smith, Esq.
Law Office of Benjamin S. Gifford, IV        Department of Justice
14 Ashley Place                              102 West Water Street
Wilmington, DE 19804                         Dover, DE 19904
Attorney for Defendant                       Attorney for State

Submitted:  October 24, 2017
Decided:    February 12, 2018

## INTRODUCTION

Before the Court is a motion to suppress filed by Defendant Konstantino P. Papinicolas. The defendant has been charged with Driving Under the Influence ("DUI") in violation of Title 21, Section 4177(a)(1) of the Delaware Code. He has filed the current motion to suppress evidence obtained after the traffic stop and DUI arrest for this case. In relevant part, the defendant contends that (1) the police officer who stopped him lacked reasonable and articulable suspicion to conduct

the traffic stop of his vehicle and (2) the police officer lacked probable cause to arrest him. The Court heard testimony and argument on the defendant's motion and reserved its decision. After a careful consideration of the evidence and the applicable law, the defendant's motion to suppress is DENIED.

## FACTS[1]

During the evening of January 1, 2017, a law enforcement officer for the Clayton Police Department ("Officer") was driving westbound on Wheatley's Pond Road in Clayton, Kent County, Delaware. He proceeded behind two vehicles. The lead vehicle was driven by the defendant. The Officer noticed the driver side tires of the defendant's vehicle pass left of the center double yellow lines on the roadway, causing the driver of the car to the rear of it to press on his brakes. Next, the defendant drifted to the right and his right tires passed over the fog line on the lane, which caused defendant's vehicle to come close to hitting construction barrels on the shoulder of the road. The defendant then signaled and turned left onto Hillyard Road. During this turn, the defendant's tires travelled onto the grass of the road's shoulder. The Officer decided, at that time, to continue to observe the defendant's behavior. Therefore, he continued onto Hillyard Road following the defendant. No cars were between the defendant and the Officer at this point. The Officer noticed that the defendant then went over the double yellow lines to the left of his vehicle once again and drifted back right onto the dirt shoulder.

---

[1] The Court has found the facts of this hearing by a preponderance of the evidence, based on the evidence introduced at the hearing, including all testimony and the Officer's motor vehicle video recording.

Next, the defendant approached a stop sign. The defendant did not stop his vehicle until his car was almost entirely past the stop sign, with his vehicle in the intersection. After the stop, the defendant advanced into the intersection as a vehicle with the right of way started a right hand turn onto Hillyard Road in front of him. After the defendant cleared the intersection, the Officer activated his emergency lights. The defendant did not pull over. He continued down Hillyard Road. The Officer used his overhead lights and two different tones of sirens to pull the defendant over. However, the defendant continued on driving for about a mile, although he had adequate opportunity to pull over, braking three times but not stopping. Finally, the defendant entered a development and came to a stop.

When the Officer approached the defendant's vehicle, he observed that the defendant looked tired, with his eyes sunken in, glassy, watery and bloodshot. There was an "extreme" odor of alcohol coming from the defendant.[2] The Officer asked the defendant for his driver's license and registration. The defendant retrieved his registration but was unable to find his driver's license. The Officer then asked the defendant to perform the counting test and alphabet test. The defendant successfully stated all the letters of the alphabet from E to P. He was also able to count backwards from 68 to 47, although the Officer testified that it was done extremely slowly.

The Officer continued his investigation by asking the defendant to step out of his vehicle, which he did without difficulty, and he had him perform field sobriety tests. The defendant performed the walk and turn test. During this test, he missed heel to toe by one half an inch to an inch on each step and stopped at step 7, at which time he stepped off the line. He also performed

---

[2] The State also introduced evidence that the smell of alcohol coming from defendant was due to him drinking at a football game. This evidence will not be used by the Court for probable cause purposes as the Officer obtained this information after the defendant was under arrest. When the defendant's car was approached, the defendant simply told the Officer that he had been to a football game and was tired.

the one-leg stand test. The Officer instructed the defendant to hold one of his feet six inches off the ground in front of his body and to count out loud to thirty by one thousands, while keeping his hands down. The defendant did not follow the Officer's instructions as he only raised his foot by one half an inch during the one-legged stand test. However, he otherwise performed the test well by not swaying or raising his arms.[3] At this point, the defendant was placed under arrest for DUI and detained for an intoxilyzer test.[4]

The defendant has filed a motion to suppress evidence alleging that the Officer lacked the the requisite reasonable and articulable suspicion to believe that a crime had been committed or was about to be committed when he stopped the defendant. He also contends that the Officer lacked probable cause to believe that the defendant was driving his vehicle while impaired when he was arrested for DUI.[5] The State opposes the defendant's motion. It contends that the defendant's erratic driving, along with the consequent traffic violations, provided the reasonable and articulable suspicion of a crime necessary to execute a stop of the defendant's vehicle. The State further contends that the Officer had probable cause to arrest the defendant for DUI given the defendant's erratic driving behavior, along with his appearance, strong odor of alcohol emanating from the defendant and the defendant's performance on all of the pre-exit and field sobriety tests administered to him.

---

[3] The Officer also administered the horizontal gaze nystagmus (HGN) test and a portable breath test. However, the State is not seeking the admission of the results of these tests to prove probable cause.

[4] It is important to note that the defendant has also been charged with Failure to Remain Within a Single Lane in violation of 21 *Del. C.* § 4122(1).

[5] In his argument, the defendant contends that the Officer failed to obtain the defendant's consent prior to administering field sobriety tests. Therefore, the Court should not consider the defendant's performance on these tests pursuant to *State v. Laphen,* 1996 WL 35045247 (Del. Com. Pl. Dec. 23, 1996). However, this argument was not included in the defendant's motion to suppress. Therefore, the Court will not consider this issue.

4

## BURDEN OF PROOF

"When a defendant moves to suppress evidence collected [without a warrant] the State bears the burden of proving by a preponderance of the evidence 'that the challenged police conduct comported with the rights guaranteed [to the defendant] by the United States Constitution, the Delaware Constitution and Delaware Statutory Law.'"[6]

## DISCUSSION

### I.    Reasonable and Articulable Suspicion

Delaware law provides that "a seizure occurs in a traffic stop once a police officer activates his emergency lights in order to signal the operator to stop his vehicle."[7]  A police officer is able to conduct an investigatory detention of an individual if there is "reasonable articulable suspicion that criminal activity is afoot."[8]

"Reasonable articulable suspicion exists when an 'officer [ ] points to specific facts, which viewed in their entirety, accompanied by rational inferences, support the suspicion that the person sought to be detained was in the process of violating the law.'"[9]  "A determination of reasonable articulable suspicion is 'both somewhat abstract and fact specific,' turning on the

---

[6] *State v. Sapp*, 2017 WL 57840, at *2 (Del. Super. Jan. 4, 2017) (quoting *State v. Kang*, 2001 WL 1729127, at *3 (Del. Super. Nov. 29, 2001)) (second alteration in original).
[7] *State v. Roberts*, 2001 WL 34083579 at *3 (Del. Super. Sept. 27, 2001) ("In this case, Roberts would have been in violation of the law had he left once the officer activated the emergency lights.  Thus, under these circumstances and following the law as set forth above, Roberts was seized once [the officer] activated her emergency lights").
[8] *Terry v. Ohio*, 329 U.S. 1 (1968).
[9] *State v. Lackford*, 2014 WL 1230765, at *3 (Del. Super. Jan. 29, 2014) (alteration in original) (quoting *Cummings v. State*, 765 A.2d 945, 948 (Del. 2001)).

5

particular circumstances of each case."[10] A traffic offense provides reasonable and articulable suspicion for a traffic stop.[11] An officer's failure to specify an exact motor vehicle violation as the purpose for conducting a stop does not preclude the court from concluding that the officer had reasonable articulable suspicion to make the stop.[12] "The facts need only provide a basis for the court to determine whether the State has shown that the stop was reasonable under the circumstances."[13]

In this case, the Court concludes that the State has proved that the Officer had a reasonable and articulable suspicion that a traffic offense had been committed by the defendant when the defendant was stopped. The defendant twice violated 21 *Del. C.* § 4120(b) when he drove his vehicle on the left side of the double yellow line on the roadway.[14] Additionally, the Officer observed the defendant drive through a stop sign in violation of 21 *Del. C.* § 4164(a).[15] The Officer certainly had a reasonable and articulable suspicion to stop the defendant for these traffic violations. In addition to the traffic violations that the Court has already cited, the Officer observed the defendant (1) drift over the right fog line and almost hit construction barrels and (2) drive off the roadway and onto the right shoulder and grass while executing a left hand turn. This continued erratic driving also provided the evidence necessary for the Officer to have a reasonable and articulable suspicion that the defendant was DUI.

---

[10] *State v. Mulholland,* 2013 WL 3131642, at *3 (Del. Com. Pl. June 14, 2013).

[11] *Bease v. State,* 884 A.2d 495, 499 (Del. 2005) (citing *Traylor v. State,* 458 A.2 1170, 1174 (Del. 1983).

[12] *State v. Shockley,* 2004 WL 844187, at *3 (Del. Com. Pl. Feb. 10, 2004).

[13] *Mulholland,* 2013 WL 3131642, at *3.

[14] In pertinent part, 21 *Del. C.* § 4120(b) provides that "[w]here signs or markings are in place to define a no-passing zone, no driver shall at any time drive on the left side of the roadway within such no-passing zone or on the left side of any pavement striping designed to mark such no-passing zone throughout its length."

[15] Section 4164(a) of Title 21 of the Delaware Code provides as follows:

"Except when directed to proceed by police officers or traffic-control devices, every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop at a marked stop line, but if none, before entering the crosswalk on the near side of the intersection or if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection."

## II.    Probable Cause

Delaware statute permits officers to arrest an individual without warrant if the officer "has reasonable ground to believe that the person to be arrested has committed a misdemeanor in the officer's presence." [16] The Delaware Supreme Court construes a "reasonable ground to believe" to require probable cause. [17] "Probable cause to arrest for a DUI offense exists when an officer possesses 'information which would warrant a reasonable man in believing that [such] a crime ha[s] been committed.'"[18] Probable cause is established when under the totality of the circumstances, based on the facts as viewed by a reasonable officer in light of his training and experience, the court believes that the officer had sufficient knowledge at the time of the arrest to conclude that the defendant was driving under the influence.[19] "A police officer may consider irrational, erratic, or belligerent behavior in making his or her probable cause determination."[20]

"A traffic violation combined with odor of alcohol does not alone constitute probable cause to arrest for DUI, but may amount to reasonable suspicion of DUI and justify a request to perform [field] tests."[21] However, "[t]here are many factual scenarios where probable cause to arrest for a DUI offense is so clear that the driver is not asked to perform any field tests."[22] In *Mulholland*, the court held that "*minor* weaving within lanes, odor of alcohol, bloodshot eyes at midnight, and admission to drinking at a funeral earlier in the day" were not facts sufficient to establish probable cause prior to the defendant's performance on any field tests.[23] The court

---

[16] 11 *Del.C.* §1904(a)(1).

[17] *Roy v. State*, 62 A.3d 1183, 1187 n.3 (Del. 2012).

[18] *Lefebvre v. State*, 19 A.3d 287, 292 (Del. 2011) (alterations in original (quoting *Clendaniel v. Voshell*, 562 A.2d 1167, 1170 (Del. 1989)).

[19] *Mulholland*, 2013 WL 3131642, at *3-4.

[20] *State v. Trager*, 2006 WL 2194764, at *6 (Del. Super. July 28, 2006).

[21] *Mulholland*, 2013 WL 3131642, at *4.

[22] *Lefebvre*, 19 A.3d at 295.

[23] *Mulholland*, 2013 WL 3131642, at *5 (emphasis added).

7

concluded that what was absent from the facts "was unusual speech, plus something more (i.e. being argumentative, having a flushed face, or failing an alphabet test)."[24]

In the current case, the Court concludes that under the totality of the circumstances, the State has proved that sufficient evidence existed to provide the Officer probable cause to arrest the defendant for DUI prior to his performance of any field sobriety tests. The defendant's erratic driving along with the "extreme" odor of alcohol emanating from him and his appearance of glassy, watery and bloodshot eyes are facts sufficient to establish probable cause that the defendant was DUI prior to the defendant's performance of any field tests. Prior to his arrest for DUI, the Officer observed erratic driving as follows: (1) The defendant twice violated 21 *Del. C.* § 4120(b) when he drove his vehicle on the left side of the double yellow line on the roadway, (2) the defendant drove through a stop sign in violation of 21 *Del. C.* § 4164(a), (3) the defendant drifted from the left side of the double yellow line to the right over the right fog line and almost hit construction barrels, (4) the defendant drove off the roadway and onto the right shoulder and grass while executing a left hand turn, and, importantly, (5) failed to obey a police officer in violation of 21 *Del. C.* § 4103 by not immediately pulling over as soon as he was safely able to do so after the Officer had activated his emergency lights and two different tones of sirens.[25]

---

[24] *Id.; see Lefebvre,* 19 A.3d at 293 (holding that probable cause preexisted field tests when there was a traffic offense, strong odor of alcohol, flushed face, bloodshot and glassy eyes, admission to drinking an hour earlier, flustered and argumentative behavior, and a statement by the defendant prior to performance of the one-leg stand test that she could not perform the test sober.); and *Bease v. State,* 884 A.2d 495, 499-500 (Del. 2005) (holding there was probable cause to arrest the defendant prior to performing field tests based on the defendant's rapid speech, odor of alcohol, admission to drinking, bloodshot and glassy eyes, and improper lane change).

[25] In pertinent part, 21 *Del. C.* § 4103(b) provides that "[a]ny driver who, having received a visual or audible signal from a police officer identifiable by uniform, by motor vehicle or by a clearly discernable police signal to bring the driver's vehicle to a stop, operates the vehicle in disregard of the signal or interferes with or endangers the operation of the police vehicle or increases speed or extinguishes the vehicle's lights and attempts to flee or elude the police officer shall be guilty of a class G felony . . . ."

## CONCLUSION

Based on the foregoing analysis, the Court finds that under the totality of the circumstances, the Officer had a reasonable and articulable suspicion to stop the defendant for traffic offenses and DUI. He also had probable cause to arrest the defendant for DUI. Therefore, the defendant's motion to suppress is DENIED.

_____
The Honorable Charles W. Welch, III

9