IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | : | |
| | : | I.D. No. 1803018276 |
| v. | : | Kent County |
| | : | |
| MATTHEW A. LAYTON, | : | |
| | : | |
| Defendant. | : | |

Submitted: July 18, 2018
Decided: August 2, 2018

## ORDER

Upon Defendant's Motion to Suppress.
*Granted.*

Gregory R. Babowal, Esquire of the Department of Justice, Dover, Delaware; attorney for the State.

Anthony J. Capone, Esquire of the Office of the Public Defender, Dover, Delaware; attorney for the Defendant.

WITHAM, R.J.

Upon consideration of the Defendant's, Matthew A. Layton's, Motion to Suppress and the State of Delaware's Response in opposition, it appears that:

1. On March 27, 2018, at approximately 6:32 P.M., Trooper First Class ("Tfc.") Holl of the Delaware State Police observed a vehicle parked in an unmarked, paved area that extended past the side of the Sandtown Deli in Felton, Delaware. The paved area, although unmarked, appears to the Court to be an overflow lot for the deli.

2. Three men were standing next to the vehicle with the doors open.

3. The officer believed that the vehicle's location was suspicious, especially because the officer had previously arrested another individual in the same location for dealing drugs.

4. As Tfc. Holl began to re-position his patrol vehicle to "conduct a stop" of the parked vehicle, he observed the three men get into the vehicle. The officer further observed the men shifting around in the vehicle, as if to possibly hide or conceal illegal contraband.

5. Tfc. Holl then positioned his patrol vehicle in front of the parked vehicle, blocking the occupants from leaving. Next, the officer exited his vehicle and approached the occupants of the parked vehicle.

6. The Defendant, sitting in the passenger seat of the parked vehicle, informed Tfc. Holl that he had driven his own vehicle to the deli and that he was merely "talking" with another occupant of the parked vehicle, who he identified as his uncle. During this conversation, according to Tfc. Holl, the Defendant displayed "obvious signs of nervousness." The officer also noticed that the Defendant had a pocket

knife, which he immediately turned over to the officer. Tfc. Holl subsequently instructed the Defendant to wait in front of the officer's patrol vehicle.

7. Tfc. Holl asked the occupant located in the driver's seat of the vehicle how he was related to the Defendant. The occupant replied that he was not the Defendant's uncle, "however they were good friends." The occupant also confirmed that he and the Defendant were "talking" prior to the officer's approach. During this time, the Defendant paced back and forth in front of Tfc. Holl's vehicle.[1]

8. After speaking with the occupant located in the driver's seat of the parked vehicle, Tfc. Holl approached the Defendant. The officer asked the Defendant why he appeared nervous. The Defendant stated that he was cold. But, Tfc. Holl noticed that he was wearing multiple layers of clothing, including a thick flannel shirt and hooded sweatshirt.

9. Tfc. Holl also noticed a bulge in the front pocket of the Defendant's sweatshirt. As a result, the officer claimed that he decided to conduct a "pat-down" of the Defendant's clothing. However, the officer immediately reached out, grabbed the bulge, and asked "what is this? Is it crack?" The Defendant replied, "you know what that is, drugs man" and "I ain't gonna run dude, I ain't gonna run." Tfc. Holl removed the object from the interior of the Defendant's sweatshirt pocket.

10. When asked again, "what is this?," the Defendant further stated that "it's a scale, and some crystal." "Crystal" referring, of course, to Methamphetamine. The

---

[1] The Defendant contends that he was merely shifting back and forth, however, having reviewed the video recording, the Court finds that his movements were somewhere between the two.

Defendant also told Tfc. Holl that he was in possession of ecstacy and that he had a "drug problem."

11. Finally, having retrieved these items from the Defendant, Tfc. Holl informed the Defendant of his rights pursuant to *Miranda v. Arizona* and placed the Defendant in the back of his patrol vehicle.

12. On June 18, 2018, the Defendant filed the instant motion to suppress, seeking to exclude all of the evidence seized by Tfc. Holl. In support of this request, the Defendant contends that Tfc. Holl did not have a reasonable articulable suspicion of criminal activity required to justify the stop of the parked vehicle in this case. Second, the Defendant contends that Tfc. Holl's "frisk" of the Defendant was unsupported by a reasonable articulable suspicion that the Defendant possessed a weapon. Third, the Defendant contends that Tfc. Holl's questioning of the Defendant, prior to informing him of his rights, constituted a violation of his *Miranda*.

13. On June 20, 2018, the State filed its response in opposition. The State contends that Tfc. Holl had a reasonable articulable suspicion to stop the Defendant because the Defendant was located in a "high crime area" and the Defendant made "furtive movements" within the vehicle upon seeing the officer. Second, the State contends that Tfc. Holl had a reasonable articulable suspicion to frisk the Defendant because the Defendant exhibited nervous behavior, lied about his relationship with another occupant of the vehicle, and had a "bulge" in the front pocket of his sweatshirt. Third, the State contends that Tfc. Holl's questioning of the Defendant

did not constitute "substantial custodial interrogation." Thus, the State requests that the Defendant's Motion to Suppress be denied.

14. The first step in the Court's analysis is to determine when Tfc. Holl actually detained the Defendant. A stop occurs when a police officer displays conduct that would "have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business."[2] "Under the Fourth Amendment to the United States Constitution, a seizure requires either physical force or submission to assertion of authority."[3] Here, the State's answering brief acknowledges and the Court concludes that when Tfc. Holl approached the parked vehicle in his marked patrol vehicle, so as to prevent it from driving away, a seizure had taken place for purposes of the Fourth Amendment analysis.[4]

15. The next step in the Court's analysis is to determine if Tfc. Holl had a reasonable and articulable suspicion to stop and detain the Defendant. "The Fourth Amendment of the United States Constitution protects individuals from 'unreasonable searches and seizures.'"[5] In *Terry v. Ohio*, the United States Supreme Court held that

---

[2] *Jones v. State*, 745 A.2d 856, 862 (Del. 1999) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988)).

[3] *Purnell v. State*, 832 A.2d 714, 719 (Del. 2003) (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)).

[4] *See Riley v. State*, 892 A.2d 370 (Del. 2006) (where the Court determined that a seizure had occurred when undercover officers approached a vehicle with badges and flashlights, after having parked their police vehicle behind the suspect's vehicle so as to prevent it from driving away).

[5] *Id.* at. 373 (citing U.S. Const. amend. IV).

5

law enforcement officers may stop and temporarily detain a person on less than the probable cause sufficient for a lawful arrest without violating the Fourth Amendment.[6] Such a stop is justified if "specific and articulable facts, . . . together with all rational inferences," suggest that a suspect was involved in criminal activity.[7]

16. In *Jones v. State*, the Delaware Supreme Court examined at length the basic justification for police detention under both Federal and State constitutional norms.[8] The Court there maintained that the standards for investigating stops and detentions have been codified under Delaware law in 11 *Del. C.* § 1902[9] and that the term

---

[6] *Terry v. Ohio*, 392 U.S. 1 (1968).

[7] *Id.* at 21.

[8] *Jones*, 745 A.2d 856 (1999).

[9] 11 *Del. C.* § 1902 provides:

Questioning and detaining suspects.

(a) A peace officer may stop any person abroad, or in a public place, who the officer has a *reasonable ground to suspect* is committing, has committed or is about to commit a crime, and may demand the person's name, address, business abroad and destination.

(b) Any person so questioned who fails to identify himself or explain his actions to the satisfaction of the officer may be detained and further questioned and investigated.

(c) The total period of detention provided for by this section shall not exceed 2 hours. The detention is not an arrest and shall not be recorded as an arrest in any official record. At the end of the detention the person so detained shall be release or arrested and charged with a crime.

"reasonable ground" contained in Section 1902(a) has the same meaning as reasonable and articulable suspicion.[10] The threshold of "reasonable and articulable suspicion" under either constitutional or statutory standards requires the officer to point to specific facts, which viewed in their entirety, accompanied by rational inferences, support the suspicion that the person sought to be detained was in the process of violating the law.[11] The totality of the circumstances, as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, must be examined to determine if reasonable suspicion has been properly formulated.[12]

17. In *Cummings v. State*, an officer observed two individuals sitting in a vehicle in the parking lot of the Delaware Waste Treatment Plant, which was closed at that time.[13] The men drove their vehicle out of the lot as the officer approached them.[14] The Delaware Supreme Court noted that the area of the stop was not a "high crime" area and, while the officer had responded to burglar alarms and the recovery of stolen motor vehicles in that same area, there was "no indication that the police

---

[10] *Jones*, 745 A.2d at 861.

[11] *See Downs v. State*, 570 A.2d 1142, 1145 (Del. 1990).

[12] *See United States v. Sokolow*, 490 U.S. 1, 8 (1989); *Jones*, 745 A.2d at 861.

[13] *Cummings v. State*, 765 A.2d 945, 947 (Del. 2001).

[14] *Id.*

were employing special efforts and vigilance because of unusual criminal activity."[15] The vehicle was also parked during daylight hours on state property open to the public. "Furthermore, while flight from the police may be an element in the formation of reasonable suspicion,[16] merely leaving the scene upon the approach, or the sighting, of a police officer is not, in itself and standing alone, suspicious conduct."[17] "A citizen is not required to remain in a fixed location merely upon the approach of a police officer."[18] Therefore, the Court held on these facts solely, the officer did not have reasonable suspicion sufficient to justify a seizure.[19]

18. Here, although Tfc. Holl testified that he previously arrested an individual at the Sandtown Deli for drug dealing, he also stated that police were not "employing special efforts and vigilance because of unusual criminal activity" in the area. The area surrounding the deli, consequently, cannot be considered a "high crime" area for the purposes of evaluating the totality of the circumstances. That leaves the Court with only two factors to consider in deciding whether Tfc. Holl possessed a reasonable articulable suspicion to stop the Defendant: (i) the seemingly odd location of the parked vehicle in the un-marked area close to the deli; and (ii) the Defendant's

---

[15] *Id.* at 949.

[16] *See Illinois v. Wardlow*, 528 U.S. 119, 123-25 (2000).

[17] *Cummings*, 765 A.2d at 949.

[18] *Id.*

[19] *Id.*

furtive gestures. First, in regards to the location of the vehicle, the Court has reviewed the video recording of Tfc. Holl's interaction with the occupants of the parked vehicle, and, the Court does not believe that the vehicle is parked so far away from the deli as to constitute *per se* suspiciousness. Additionally, it is unclear if, possibly, the vehicle was parked in that location because all of the marked parking spaces near the deli were occupied when the driver of the vehicle arrived. Second, the furtive gestures that Tfc. Holl refer to are somewhat ambiguous. The officer testified that when the Defendant saw the officer, that he and his companions immediately got into the parked vehicle and began to move or shuffle things around. Yet, that seems consistent with the actions of passengers who just purchased food from the deli and are likely preparing to leave the establishment once the Defendant finished his conversation with the driver of parked vehicle. Moreover, even if the Court considers the Defendant's movements as unambiguously "furtive," the Court finds, as other courts have, that mere "furtive' movements alone are insufficient to establish reasonable suspicion.[20]

---

[20] *See United States v. Ridley*, 1998 WL 778381, at *3 (10th Cir. 1998) (where, in the context of a *Terry* search for weapons, the court held that "furtive" movements standing alone were not enough to establish reasonable suspicion); *United States v. Humphrey*, 409 F.2d 1055, 1059 (10th Cir. 1969) (same). *See also United States v. Foster*, 634 F.3d 243, 248 (4th Cir. 2011) (where a police officer's investigative detention was not supported by reasonable suspicion even though: (1) the officer had prior knowledge of the defendant's criminal record; (2) the defendant suddenly appeared from a crouched position in a parked car after apparently being warned that the officer was approaching; and (3) the defendant moved his arms in a "frenzied" manner towards the floor of the vehicle upon seeing the officer); *United States v. Sprinkle*, 106 F.3d 613, 618 (4th Cir. 1997) (where police officers' investigative detention was not supported by reasonable suspicion even though: (1) an officer knew that the driver of a vehicle had a criminal record and had recently been released from

*State v. Matthew A. Layton*
I.D. No 1803018276
August 2, 2018

19. In sum, the totality of the circumstances do not indicate to the Court that Tfc. Holl possessed a reasonable and articulable suspicion to stop the Defendant or his companions. As the detention was improper, the Court declines to address the remaining issues raised by the Defendant in this case because the Court must suppress any evidence seized by Tfc. Holl during the Defendant's unlawful detention.

The Defendant's Motion to Suppress is hereby **GRANTED**

**IT IS SO ORDERED.**

Hon. William L. Witham, Jr.
Resident Judge

WLW/dmh
oc:    Prothonotary
xc:    Gregory R. Babowal, Esquire
       Anthony J. Capone, Esquire

---

prison after serving time for narcotic violations; (2) the subjects, including the defendant, were spotted in a neighborhood known by officers for high narcotics crime; (3) when the defendant entered the vehicle, he and the driver huddled toward the center console with their hands close together; and (4) as an officer walked past the car, the defendant put his head down and moved his hand to cover his face, as if to avoid recognition).

10