IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,       :

                         :    I.D. No. 1803009958

     v.                 :

                         :

ALFRED TERRY,        :

                         :

    Defendant.      :

Submitted: September 9, 2019
Decided: September 10, 2019

## ORDER

Defendant's Motion to Suppress.
*Granted.*

Stephen E. Smith, Esquire of the Department of Justice, Dover, Delaware; attorney for the State.

J'Aime L. Walker, Esquire of the Office of the Public Defender, Dover, Delaware; attorney for the Defendant.

WITHAM, R.J.

Before the Court are the Motion to Suppress by Defendant, Alfred Terry, the State's Response in opposition, and the record in this case. Mr. Terry seeks suppression of all evidence obtained against him following a traffic stop, detention, and subsequent search of his person and his vehicle by Delaware State Police. As the facts stand presently, it appears to the Court that:

1. On or about March 15, 2018, Officers of the Dover Police Department stopped Mr. Terry's vehicle for an illegal window tint.[1] Prior to the stop, Detective Willson (hereinafter "Det. Willson") observed Mr. Terry conducting a hand drug transaction with an unknown black male on Spruance Road in Dover, Delaware.[2] Det. Willson also observed Mr. Terry operating a white Ford Escape Delaware Registration PC 39816.[3] After following the car, Det. Willson advised Corporal Richey (hereinafter "Cpl. Richey") that the car had heavy window tint on all windows.[4] Cpl. Richey conducted a Criminal Justice Information Services (CJIS) check, which revealed that the vehicle did not have a window tint waiver.[5]

2. Three officers, Cpl. Richey, PFC Johnson and SPO Porter, followed the

---

[1] Defendant's Motion to Suppress (hereinafter "D. Mot.") at ¶ 1.

[2] *Id.* at ¶ 2 (Detective Willson was conducting surveillance in the area).

[3] *Id.*

[4] *Id.*

[5] *Id.*

vehicle and conducted a traffic stop after observing the window tint.[6] Two more officers arrived at the scene to assist with the traffic stop.[7] PFC Johnson approached the vehicle on the driver's side and made contact with Mr. Terry.[8] Mr. Terry was asked to roll down all the windows because of the heavy window tint, and he complied.[9] Cpl. Richey approached the car on the passenger side and immediately detected a strong odor of cologne or perfume emitting from inside the vehicle.[10] Officers also observed that Mr. Terry was nervous.[11]

3. Once the odor of the cologne began to dissipate due to open windows, the odor of marijuana became prominent.[12] At that point, Mr. Terry was removed from the vehicle for the search of his person and his vehicle due to the odor of marijuana.[13] The State claims that Mr. Terry stated he did have a little bit of marijuana that he

---

[6] *Id.* at ¶ 3.

[7] D. Mot. Ex. A at pg. 4.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] D. Mot. at ¶ 4 (Defendant states that one of the officers said to another that Mr. Terry was extremely nervous).

[12] D. Mot. Ex. A at pg. 4.

[13] *Id.*

forgot about in his pocket.[14] PFC Johnson recovered a plastic bag containing approximately 1.7 grams of marijuana from Mr. Terry's right front pants pocket.[15]

4. A search of Mr. Terry's vehicle was than conducted, and SPO Barrett located a handgun (9-millimeter Sig Sauer with a round of ammunition in the chamber as well as approximately 8 rounds of ammunition inside the magazine) concealed under the driver's seat, which Mr. Terry was occupying during the traffic stop.[16] Cpl. Richey also located a digital scale in the center console of the vehicle.[17] SPO Stagg located a mail envelope that contained a plastic bag with 88 grams of marijuana.[18] SPO Stagg also located plastic baggies underneath the envelope.[19]

5. Mr. Terry contends that there was no probable cause to take him into custody, no probable cause to search him, and no probable cause to search his vehicle.[20] He further asserts that the search performed was in contravention to the Fourth and Fourteenth Amendments of the United States Constitution and Article I,

---

[14] *Id.*

[15] *Id.*

[16] *Id.* (The gun was later confirmed stolen).

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] D. Mot. at ¶ 8-10.

Section VI of the Constitution of the State of Delaware.[21]

6. The State denies Mr. Terry's claims and asserts that the initial stop was justified by the illegal window tint, and the stop was extended due to the hand-to-hand drug transaction, use of odor masking agent, and, ultimately, the odor of marijuana.[22]

7. On a motion to suppress evidence seized during a warrantless search or seizure, the State bears the burden of establishing that the challenged search or seizure comported with the rights guaranteed by the United States Constitution, the Delaware Constitution, and Delaware statutory law.[23] The burden of proof on a motion to suppress is proof by a preponderance of evidence.[24]

8. The Fourth and Fourteenth Amendments of the United States Constitution, and Article I, Section 6 of the Delaware Constitution, protect individuals from unreasonable searches and seizures. Under the Fourth Amendment, a traffic stop by the police is a "seizure" of the vehicle and its occupants.[25] Consequently, a traffic stop must be justified at its inception by a reasonable suspicion of criminal activity,

---

[21] *Id.*

[22] State Reply (hereinafter "St. Reply") at ¶ 7-10.

[23] *Hunter v. State*, 783 A.2d 558, 560 (Del. 2001).

[24] *State v. Abel*, 2001 WL 5221276, at *2 (Del. Super. 2011), *aff'd*, 68 A.3d 1228 (Del. 2012), *as amended* (Jan. 22, 2013).

[25] *Caldwell v. State*, 780 A.2d 1037, 1045 (Del. 2001) (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 880-81, 95 S.Ct. 2574, 45 L.E.2d 607 (1975)).

and the scope of the stop must be reasonably related to the stop's initial purpose.[26]

9. A police officer who observes a traffic violation has probable cause to stop the vehicle and its driver, however, "[t]he scope and duration of the detention must be reasonably related to the initial justification for the stop."[27]

10. "[A]ny investigation of the vehicle or its occupants beyond that required to complete the purpose of the traffic stop constitutes a separate seizure that must be supported by independent facts sufficient to justify the additional intrusion."[28] If the police prolong a suspect's road side detention in order to investigate other possible crimes, it becomes a second detention.[29] The second detention is unconstitutional unless it is based on specific and articulable facts which, taken together with all rational inferences, raised an objective suspicion of criminal behavior.[30]

11. Reasonable suspicion must be based upon more than a hunch.[31] Delaware

---

[26] *Id.* At 1046-47. Delaware has codified the *Terry v. Ohio* standard for investigatory stops and detentions in 11 *Del. C.* § 1902. Pursuant to § 1902, "[a] peace officer may stop any person abroad, or in a public place, who the officer has reasonable ground to suspect is committing has committed or is about to commit a crime, and may demand the person's name, address, business abroad and destination." The term "reasonable ground" has the same meaning as "reasonable and articulable suspicion." *Cummings v. State*, 765 A.2d 945, 948 (Del. 2001).

[27] *Holden v. State*, 23 A.3d 843, 847 (Del. 2011).

[28] *Caldwell*, 780 A.2d at 1047.

[29] *Id.*

[30] *Cummings*, 765 A.2d at 948.

[31] *State v. Huntley*, 777 A.2d 249, 255 (Del. Super. 2000).

courts define reasonable suspicion as an "officer's ability to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion."[32] A determination of reasonable suspicion "must be evaluated in the context of the totality of the circumstances as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[33]

### A. Initial Traffic Stop - Window Tinting

12. In this case, the initial traffic stop constituted a seizure of Mr. Terry for Fourth Amendment purposes. The seizure was supported by probable cause because Cpl. Writer discovered that Mr. Terry's vehicle did not have a waiver for an improper window tint. The fact that the initial stop was proper is not contested in this case.

### B. Mr. Terry's Continued Detention

13. Having determined that the stop was lawful, the Court must next address whether Mr. Terry's detention was reasonably related in scope and duration to the initial justification for the stop. The Court's decision is guided by *State v. Stanley*.[34] In *Stanley*, an officer stopped the defendant because his vehicle's windshield was

---

[32] *Holden*, 23 A.3d at 847 (Del. 2011) (citing *State v. Henderson*, 892 A.2d 1061, 1064-65 (Del. 2006)).

[33] *Id.* (citing *Jones v. State*, 745 A.2d 856, 861 (Del. 1999)).

[34] *State v. Stanley*, 2015 WL 9010669 (Del. Super. Dec. 9, 2015).

severely cracked and the muffler was swinging loose.[35] Once the vehicle pulled over the officer approached the defendant, whereby the officer noticed the defendant was leaning forward in his seat with his hand in a bag that was located between his legs.[36] The officer also noticed three cellular telephones sitting in the defendant's center console.[37] In addition, the defendant's hands were shaking when the officer asked for additional paperwork.[38] After this brief interaction, the officer returned to his vehicle to write a warning citation. He also ran a criminal history check and called for backup, so that he could conduct a K-9 sniff test.[39] Once backup arrived, the defendant was asked to step out of his vehicle so that another officer could explain the warning citation.[40]

14. The *Stanley* Court determined that the simple act of removing the defendant from the vehicle, after the citation was completed, constituted a second

---

[35] *Id.* at *1.

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] The officer's decision to perform the K-9 sniff test was based on numerous factors including: the time it took the defendant to pull over; the position in which the defendant was sitting in his vehicle; finding three cellular telephones on the center console of the defendant's vehicle, the defendant's decision to pull over in a high crime area; the defendant's visibly shaking nervous condition when the officer approached, and the defendant's extensive police record which included multiple drug convictions. *Id.*

[40] *Id.* at *2.

seizure because the defendant's removal from his vehicle *measurably* extended the time needed to complete the traffic stop.[41] The continued seizure, therefore, must have been supported by independent facts sufficient to justify the additional intrusion.

15. Here, the facts indicate that Mr. Terry was removed from the car for reasons other than the window tint. Therefore, according to *Stanley*, a second seizure occurred, requiring the officers to have independent facts to justify the additional intrusion.

### C. *Constitutionality of the Extended Detention*

16. Because the traffic stop was extended, the question thus becomes whether officers in this case had a reasonable suspicion that Mr. Terry had committed, was committing, or was about to commit a crime to justify prolonging the traffic stop.

17. The Court must consider two separate, but intertwined, lines of Delaware case law. In the first line of cases, Delaware Courts have consistently held that "inconsistent answers and nervousness without some other more tangible, objectively articulable indicators of criminality . . . do not support a finding of reasonable suspicion."[42] In the second line of cases, Delaware Courts have held that nervousness, criminal history, and use of a rental vehicle are not supportive of reasonable suspicion unless used in conjunction with "more tangible, objectively

---

[41] *See Id.* at *4.

[42] *Miliany-Ojeda*, 2004 WL 343965, at *6 (citing *Huntley*, 777 A.2d at 256).

articulable indicators of criminality."[43]   In both instances, "tangible, objectively articulable indicators of criminality," included "driving with a suspended license, failure to provide proof of ownership of vehicle, or the palpable odor of alcohol, drugs or [masking agents such as air fresheners].[44]

18. Based on the foregoing, the officers in this case had a reasonable suspicion of criminal activity to justify Mr. Terry's continued detention.  The officers had knowledge of the hand-to-hand drug transaction, which was suspicious as observed.  The officers also observed Mr. Terry's nervousness, identified a strong smell of the masking agent and, ultimately, the odor of marijuana.  All these facts taken together indicate that the officers had valid reason to extend the initial traffic stop.

### D.  *Constitutionality of Officers' Search of Mr. Terry and His Vehicle*

19. The next issue is whether the search of Mr. Terry and his vehicle were valid under the circumstances.  "In order to justify a pat down, an officer must have reasonable, articulable suspicion that the person is presently armed and dangerous."[45] In this case, the State did not present any facts to support the finding that the officers believed Mr. Terry was dangerous.[46]

---

[43] *Chandler*, 132 A.3d at 144-45; *Miliany-Ojeda*, 2004 WL 343965, at *6; *State v. Huntley*, 777 A.2d at 256.

[44] *See Chandler*, 132 A.3d at 144-45; *Huntley*, 777 A.2d at 256.

[45] *State v. Abel*, 68 A.3d 1228, 1233 (Del. 2012), *as amended* (Jan. 22, 2013).

[46] The State presented testimony that the officers had a reason to believe Mr. Terry was involved in a gang, and that a pat down was a part of the standard procedure, but did not present any testimony that the officers were in fear for their safety at the time of the pat down.

20. According to the State, Mr. Terry did not give express consent to the search of his car.[47] To determine whether Defendant gave implied consent to a search, the Court must look at the totality of the circumstances surrounding the search.[48] In this case, the only circumstance that could support the proposition that Defendant gave implied consent is the fact that Mr. Terry admitted to having a small amount of marijuana on him, according to the State.[49] This circumstance by itself would not be sufficient to determine that Mr. Terry gave implied consent in this case.

21. The warrantless search of an automobile is permitted when "at the time of the 'initial intrusion', i.e., when the car is stopped or 'seized', there exists both probable cause to justify the seizure and exigent circumstances making it impracticable to secure a warrant beforehand."[50] In this case, it is unclear whether the officers had probable cause coupled with the exigent circumstances to search Mr. Terry's car. Even if probable cause can be established based on the prior hand-to-hand transaction and the smell of marijuana, the State did not present any facts that

---

[47] The State presented testimony that established that Mr. Terry did not give express consent to the search of his person and/or his car.

[48] *See Floonory v. State*, 109 A.3d 1060, 1065 (Del. 2015).

[49] The State does not argue that Mr. Terry gave implied consent.

[50] *Schramm v. State*, 366 A.2d 1185, 1189 (Del. 1976) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 444 (1971); Chambers v. Maroney, 399 U.S. 42, 47-48 (1970); *Brinegar v. U.S.*, 338 U.S. 160, 175-176 (1949); *Carroll v. U.S.*, 267 U.S. 132, 284 (1925); *Freeman v. State*, 317 A.2d 540, 542 (1974)).

11

established exigent circumstances.[51]    Mr. Terry was a suspect in an ongoing investigation at the time he was stopped by the officers.  Police officers had plenty of time to secure a warrant prior to searching Mr. Terry's car, especially given the fact that they had time to call for back up and bring a K9 unit. Exigent circumstances do not exist under the facts of this case.

## CONCLUSION

22.    For the before mentioned reasons, the Court **GRANTS** Defendant's Motion to Suppress evidence seized as a result of the search.

IT IS SO ORDERED.

Hon. William L. Witham, Jr.
Resident Judge

WLW/dmh
oc:    Prothonotary
cc:    Stephen E. Smith, Esquire
       J'Aime L. Walker, Esquire

---

[51] Some dispute also exists as to whether Mr. Terry admitted to having marijuana on him.