**IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | C.A. No.: 2411007714 |
| | ) | |
| STIVEN R. DIAZ. | ) | |

**<u>MEMORANDUM OPINION</u>**

Defendant Stiven R. Diaz (hereinafter, "Mr. Diaz") brings this motion in accordance with Court of Common Pleas Criminal Rule 41(b) to suppress all evidence seized as a result of an arrest on November 17, 2024. The Court conducted a hearing on Mr. Diaz's motion on May 28, 2025. At the conclusion of the hearing, the Court reserved decision. For the reasons that follow, Mr. Diaz's motion to suppress is **DENIED**.

Mr. Diaz was originally charged with six (6) offenses, including one (1) count of Driving Under the Influence of Alcohol.

On November 17, 2024, at approximately 2:00 A.M., Officer Rosenberg and Office Link were patrolling in the vicinity of Concord Pike and Murphy Road in Wilmington, Delaware. While on proactive patrol, the Officers observed a black Honda Accord (the "Honda") traveling southbound on Murphy Road make an illegal left-hand turn. The officers also noticed that the Honda's taillights were inactive;

1

however, when they approached the Honda, the lights were activated. Additional traffic violations were also witnessed, such as Mr. Diaz's failure to maintain a lane and failure to signal when changing lanes.

After Mr. Diaz exited at Exit 7B onto Delaware Ave, the officers initiated a traffic stop at North Van Buren Street and Gilpin Avenue in Wilmington, Delaware, for the observed traffic violations. When the officers approached the passenger-side of the vehicle and tried to communicate with Mr. Diaz, it became readily apparent to the officers that there was a language barrier. Mr. Diaz's primary language is Spanish. The officers tried an alternative method of communication, Google Translate, which proved to be unsuccessful. However, Mr. Diaz did provide the officers with his identification card.

Shortly after the traffic stop was initiated, Trooper Osler was called out to the scene to assist the officers with the investigation. While at the scene, Officer Link informed Trooper Osler that he "detected signs of impairment from the driver." At the scene, Trooper Osler noticed a strong odor of alcohol while standing three to four feet from Mr. Diaz, his speech was slurred, and that his eyes were bloodshot.

Mr. Diaz was asked to step out of his vehicle and was then asked by Officers, in English, how many "cervezas" he consumed. Mr. Diaz gestured with his hands

"Maybe one?". Trooper Osler also testified that Mr. Diaz was steady on his feet. No pre-exit or field tests were performed.

Officers again attempted to use Google Translate to explain to Mr. Diaz what a Portable Breath Test ("PBT") was and asked for his consent. Officers explained to Mr. Diaz that he either performs a PBT at the scene or he will be placed under arrest and more testing will follow back at the police station. Mr. Diaz agreed to do the PBT, and the test was administered by Trooper Osler. The results of the PBT led to Mr. Diaz's arrest. He was placed in handcuffs and transported back to Troop 1 for further processing.

At Troop 1, the Intoxilyzer 900 was utilized, and Mr. Diaz was charged with the following offenses: 1) Driving Under the Influence of Alcohol ("DUI"), 2) Driving Without a Valid License, 3) Failure to Have Insurance Identification in Possession, 4) Failure to Have Lights on When Required, 5) Failure to Signal, and 6) Failure to Remain in a Single Lane.

In his motion, Mr. Diaz argues that the officers lacked probable cause to arrest him for a DUI or to subject him to chemical testing. Mr. Diaz's argument is that his rights under the United States Constitution and Delaware Constitution were violated, and any evidence stemming from his arrest, including chemical results, must be suppressed. The State argues that with the traffic violations combined with the

3

officers' observations of slurred speech, a strong odor emanating from Mr. Diaz's breath, bloodshot/glassy, and admission of consuming alcohol constituted probable cause for an arrest.

The Fourth Amendment of the United States Constitution as well as Article I § 6 of the Delaware Constitution protects individuals from unreasonable search and seizures[1] and "no warrant to search any place, or to seize any person or thing, shall issue without describing them as particularly as may be; nor then, unless there be probable cause supported by oath or affirmation."[2] Additionally, probable cause exists "where the facts and circumstance within the police officer's knowledge, and of which the police officer had reasonably trustworthy information, are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been or is being committed."[3]

To arrest an individual for a DUI offense, an officer must possess "information which would warrant a reasonable [person in believing] that [such] a crime ha[s] been committed."[4] To determine whether probable cause exists, courts must look to the totality of circumstances. The test "requires a showing of a probability that criminal activity is occurring or has occurred."[5] It includes objective observations

---

[1] *State v. Seaton*, 2018 WL 656380 at *2 (Del. Super. Ct. Jan. 30, 2018).
[2] Del. Const. art. I, § 6.
[3] *Bease v. State*, 884 A.2d 495, 498 (Del. 2005).
[4] *Lefebvre v. State*, 19 A.3d 287, 292 (Del. 2011).
[5] *Bease v State*, 884 A.2d 495, 498 (Del. 2005).

4

and "consideration of the modes or patterns of operation of certain kinds of lawbreakers."[6] In this case, the State bears the burden of establishing that there was probable cause of driving under the influence to require Mr. Diaz to submit an intoxilyzer test.[7]

Here, Mr. Diaz was stopped initially for committing multiple traffic violations. Neither party disputes that there was a reasonable articulable suspicion to stop Mr. Diaz's motor vehicle and probable cause to issue a traffic citation to him for those violations. During the encounter, Trooper Osler observed indicia of impairment including slurred speech, odor of alcohol emanating from Mr. Diaz's breath, and bloodshot and glassy eyes. Thus, the question solely becomes whether the Officer had probable cause to arrest Mr. Diaz for driving under the influence.

Due to Mr. Diaz's language barrier, testimony at the hearing was atypical; missing was the routine testimony about where he was coming from, how long he had been awake, or if he was getting up to go to work. At the hearing, Trooper Osler testified to making the observations stated above. The only observation that is questioned by the Court is Trooper Osler's observation of slurred speech. The only

---

[6] *Riley v. State*, 892 A.2d 370, 375 (Del. 2006).
[7] *Bease v. State*, 884 A.2d 495, 498 (Del. 2005).

evidence the State offered, showed no evidence that Mr. Diaz's speech was slurred, and thus will not be considered by the Court.

At the hearing, the State conceded to the PBT as being excluded because of the language barrier. However, since Mr. Diaz opened the door, the state reintroduced it. Even so, the Court will not consider the PBT for several reasons. First, officers did not ask Mr. Diaz if he had anything in his mouth, belched, or thrown up.[8] Second, the observation period was less than fifteen (15) minutes.[9]

Ultimately, and since no field-sobriety tests were performed, this leaves the Court to consider the motor vehicle violations, odor of alcohol, glassy eyes, and admission of consumption of alcohol to determine whether Trooper Osler had probable cause to arrest Mr. Diaz for a DUI. The Court has consistently found that observations of a traffic violation, paired with odor of alcohol, bloodshot/glass eyes, and admitting to consuming alcohol are indicia of driving under the influence.[10] Notably, the Court has held that traffic violations and the presence of odor of alcohol is not enough to establish probable cause to justify an arrest for driving under the influence.[11] This instance, falls into the former, not the latter. Based upon the

---

[8] *State v. Beheler*, 2010 WL 2195978, at *2 (Del. Com. Pl. Apr. 22, 2010).
[9] *State v. Sexton*, 2020 WL 755172, at *2 (Del. Com. Pl. Feb. 14, 2020) (the Court has held that the 15-minute observation period is required and has determinate meaning.).
[10] *Bease v State*, 884 A.2d 495, 500 (Del. 2005); *Miller v. State*, 4 A.3d 371, 374 (Del. 2010); *State v. Murray*, 2014 WL 4178345 at *3 (Del. Com. Pl. Aug. 22, 2014).
[11] *Lefebvre v. State*, 19 A.3d 287, 295 (Del. 2011).

officers' observations at the traffic stop, the Court concludes that probable cause existed to arrest Mr. Diaz for suspicion of driving under the influence.

The Court finds *Bease v. State* instructive. In *Bease*, the officers initiated a motor vehicle stop after witnessing the commission of motor vehicle infractions.[12] When the officer made contact with the driver, he observed the odor of alcohol, bloodshot/glassy eyes, and that the defendant was speaking rapidly.[13] The defendant also admitted to consuming alcohol the night prior.[14] The Delaware Supreme Court ultimately held that totality of circumstances and the defendant's traffic violation coupled with the officer's observations sufficiently established probable cause to arrest him.[15]

Similarly, in this instance, Trooper Osler testified that there was a strong odor of alcohol emanating from Mr. Diaz's breath while standing three to four feet from him. Additionally, Mr. Diaz's admitted to the consumption of alcohol to Trooper Osler. Finally, Trooper Osler observed that Mr. Diaz's eyes were bloodshot and glassy. It is fair to infer that from those observations coupled with the numerous traffic violations—the totality of the circumstances—gave Officer Osler probable cause that Mr. Diaz was driving under the influence.

---

[12] *Bease v. State*, 884 A.2d 495, 499 (Del. 2005).
[13] *Id.*
[14] *Id.*
[15] *Id.*

7

**THEREFORE, IT IS HEREBY ORDERED**, that Defendant's Motion to Suppress the evidence gathered from the November 17, 2024, is **DENIED**.

**IT IS SO ORDERED.**

The Honorable Carl C. Danberg
Chief Judge